**Odell B. WHITE, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 4232.**

United States District Court
E. D. Virginia,
Norfolk Division.

Dec. 17, 1963.

2. See United States ex rel. Drew v. Myers, supra.

Louis B. Fine, Fine, Fine, Legum & Schwan, Norfolk, Va., for plaintiff.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

MICHIE, District Judge.

Odell B. White, widow of William A. White, has brought this suit under Section 205 of the Social Security Act, hereinafter called the Act, (42 U.S.C.A. § 405) to review a final decision of the Secretary of Health, Education and Welfare denying her right to widow's insurance benefits under the Act. Mrs. White's husband, William A. White, died February 10, 1953 and, subsequent to the filing by Mrs. White of an application with the Social Security Administration for widow's insurance benefits, she was advised by the Secretary that her husband had not been a fully insured individual under the terms of the Act and that therefore she was not entitled to the benefits claimed. Mrs. White exhausted all possible remedies within the Social Security Administration and then filed this suit as permitted by the Act.

Section 202(e) of the Act (42 U.S.C.A. § 402(e)) provides, with qualifications not here relevant, for the payment of widow's insurance benefits if her husband died "a fully insured individual" as that term is defined in the Act. 42 U.S.C.A. § 414(a) defines "a fully insured individual" and Mrs. White's husband clearly came within the definition unless he was taken out of it by an exception in the definition providing that no individual would "be a fully insured individual unless he has at least six quarters of coverage". The term "quarter of coverage" as relating to this case means a quarter for which the individual has been credited with $100.00 or more of self-employment income (42 U.S.C.A. § 413(a) (2) (B)).

In this case the Secretary admits that Mr. White clearly had five quarters of coverage, four being in 1952 and the fifth in 1953. The Secretary's records contain no entry with regard to Mr. White's self-employment income in 1951, and on the basis of those records Mrs. White has been denied any widow's insurance benefits.

The dispute arises from the peculiar method which Mr. White employed in filling out his 1951 federal income tax return, which he timely filed. On it he showed earnings from self-employment from business or profession (real estate and insurance broker) of $3839.46 less expenses of $3590.10 or a net of $249.36 plus "NOTARY FEES FILING RE-PORTS" of $2756.67 making a total of $3006.03 upon which he paid income tax of $272.99. However in Schedule C, "SCHEDULE OF PROFIT (OR LOSS) IN BUSINESS OR PROFESSION AND COMPUTATION OF SELF EMPLOY-MENT TAX (for old-age and survivors insurance)", Mr. White showed only the net earnings from his real estate and insurance business of $249.36 and did not list "NOTARY FEES FILING RE-PORTS" of $2756.67 as shown in the body of the return. The result was that, though his income tax was paid in full, the self-employment tax for social security purposes was paid only on the profit from his real estate and insurance operations exclusive of the "NOTARY FEES FILING REPORTS" of $2756.-67, and the Secretary's records show no coverage for the year 1951 since $249.36 divided into four quarters does not equal the minimum of $100.00 per quarter.

The Secretary contends first that since the statutory time limitation of three years, three months and fifteen days (see 42 U.S.C.A. § 405(c) (1) (B)) has elapsed, he (the Secretary) is foreclosed by statute under the facts of this case from changing his records in any way and second that even if he were allowed by statute to change his records there is not enough positive evidence that Mr. White did have sufficient self-employment income in 1951 to warrant any change in the Secretary's records. The plaintiff of course argues the converse of both these contentions, and is prepared to tender the unpaid self-employment tax for 1951.

The situations in which changes in the Secretary's records are allowed after the expiration of the time limitation are specifically set out in 42 U.S.C.A. § 405.

Only four of them seem to be involved in this case and of these only two are relevant in the opinion of the court. I will discuss them in an order inverse to their importance in this case:

■ 1) 42 U.S.C.A. § 405(c) (5) (G) deals with "errors made in the allocation, to individuals or periods, * * * of * * * self-employment income entered in the records of the Secretary." Counsel argue that this is relevant to this case but since there has been no income at all entered in the records of the Secretary for the year 1951 and since there is no allegation that the income for 1952 or 1953 was improperly allocated, this section simply has no bearing on this case.

■ 2) Counsel also argue that 42 U.S.C.A. § 405(c) (5) (C) is applicable. It provides that the Secretary may change his records "to correct errors apparent on the face of such records." Clearly proper use of this section prohibits its consideration of any evidence not found on the face of the Secretary's records themselves, and therefore the section is not applicable to this case.

■ 3) 42 U.S.C.A. § 405(c) (4) (C) provides that:

" * * * After the expiration of the time limitation following any year—

" * * * (C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown *that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year*, in which case the Secretary shall include in his records the self-employment income of such individual for such year." (Emphasis added)

As an introductory aside in considering this section, which provides the statutory basis for the Secretary's contention that his records may not be changed in this case as well as a possible circumstance in which they may be changed, it seems clear that the "absence of an entry in the Secretary's records" means an absence which continues after all the changes or deletions allowed by 42 U.S.C.A. § 405(c) (5) have been made. This interpretation is borne out by the parenthesized phrase in 42 U.S.C.A. § 405(c) (4) (A), which deals with the probative value of the Secretary's records (and I take this to mean some positive entries) after the expiration of the time limitation and states that the records shall be considered conclusive but only "(with changes, if any, made pursuant to paragraph (5) [42 U.S.C.A. § 405 (c) (5)] of this subsection)" (bracketed material added). If this be true with respect to positive entries, it must also be true with respect to "the absence of an entry" even though the above quoted parenthesized material does not appear in § 405(c) (4) (C).

■ Considering now the circumstance set out by this section in which the Secretary "shall" (as opposed to "may" in all the other situations) change his records, it must be shown that the alleged insured "filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year." The question then is whether Mr. White's 1951 return filled out in the manner described above can be construed as "a tax return of his self-employment income" within the meaning of this section. A very recent case coming out of the Fifth Circuit answers this question in the negative. Although the facts are not set out precisely in the opinion, in Martlew v. Celebrezze, 320 F. 2d 887 (5th Cir. 1963), the taxpayer had apparently failed to list his partnership earnings on Schedule C of his form 1040 federal income tax return although he did list them in the main body of the return, thus making that case virtually on all fours with this one. In holding that the taxpayer had not "filed a tax return of his self-employment income" for social security purposes and therefore did not come under the § 405(c) (4) (C) exception, the court said at 320 F.2d 890:

"In sum, the Schedule C which a person deriving self-employment income was (and is) required to complete and to file with his form 1040 income tax return unequivocally explains that one purpose of the form is to ascertain self-employment tax liability; that the detachable portion of the form, Schedule C–a is used to inform the Social Security Administration of covered self-employment income; and that one source of such income is partnership earnings. Thus, the purpose and need for and, consequently, the requirement of, a completed Schedule C or its substantial equivalent are fully stated.

\* \* \*

"There can, therefore, be no real doubt as to the correctness of the Secretary's decision, affirmed by the district court. Affirmance of the district court's decision is called for here in order to avoid frustration of the statutory standards of record keeping and reporting established by the Social Security Act. These standards are founded upon policies lying at the very heart of the operation of the Act. Appellant's reporting in no way measures up to these standards, and thus his claim to coverage must fail. A holding in this case that appellant adequately reported his partnership income would undermine unequivocal statutory provisions and the Secretary's power to enforce them."

The reasons given for the Martlew court's strict interpretation of the § 405 (c) (4) (C) exception are cogent and persuasive, and this court is not disposed to quarrel with that particular conclusion although an effective argument could certainly be made for the other side. I therefore follow Martlew to the extent that I hold Mr. White's 1951 return was not a "tax return of his self-employment

income" within the meaning of 42 U.S.C.A. § 405(c) (4) (C).

4) 42 U.S.C.A. § 405(c) (5) (F) provides that after the expiration of the time limitation the Secretary may change or delete any entry in his records with respect to self-employment income "to conform his records to tax returns *or portions thereof* (including information returns and *other written statements*) filed with the Commissioner of Internal Revenue * * *" (emphasis added) provided that the tax return involved was filed within the time limitation following the taxable year.

The Martlew opinion recognizes that § 405(c) (5) (F) authorizes changes and deletions in the Secretary's records, holding however that the language of § 405 (c) (5) (F) is not broader than the § 405(c)(4) (C) provision but rather is precisely equivalent to it. The court reached this conclusion at 320 F.2d 889 where it stated:

"Specifically, while prior to the expiration of the time limitation the Secretary is permitted to amend his records, Sec. 205(c) (4) (C) provides that, after the expiration of this period, the absence of an entry of self-employment income in these records 'shall be conclusive * * * that no such alleged self-employment income with [sic] derived * * * unless it is shown that [the claimant] filed a tax return of his self-employment income * * * before the expiration of the time limitation * * *'. And, Section 205(c) (5) (F), 42 U.S.C. § 405(c) (5) (F), provides that after the expiration of the time limitation the Secretary may amend his records to conform them to tax returns ('including information returns and other written statements'), filed with the Commissioner of Internal Revenue pursuant to, inter alia, the Self-Employment Contributions Act, except that no amount of self-employment income can be added to the Secretary's records unless the tax return reporting it was filed within the time limitation. Thus, in summary, to add self-employment income to his earnings record, a claimant must show that he timely filed a 'tax return of his self-employment income'."

It is significant that the above quotation omitted the phrase "or portions thereof" found in § 405(c) (5) (F) and simply failed to discuss the effect of the parenthesized phrase "(including information returns or other written statements)" in reaching the conclusion that § 405(c) (5) (F) means that a taxpayer must show that he timely "filed a tax return of his self-employment income," just as he had to do under § 405(c) (4) (C) in order to allow the Secretary's records to be changed.

I cannot agree with the Martlew case in this regard. I believe that the language of § 405(c) (5) (F) is broader than that of § 405(c) (4) (C) because it specifically mentions "portions" of a tax return and "other written statements" as bases for changing the Secretary's records rather than referring to the tax return as a whole as § 405(c) (4) (C) does. And, while I was willing to follow Martlew's strict standard regarding § 405(c) (4) (C), I cannot apply such a standard where Congress has not seen fit to do so. I therefore hold that the Secretary's records may be changed in this case to conform them to the portion of Mr. White's 1951 return which refers to "NOTARY FEES FILING REPORTS $2756.67." This phrase also appears to me to be a "written statement" timely filed with the Commissioner of Internal Revenue. I will discuss the reasons why I believe that this phrase establishes the fact that Mr. White had substantial self-employment income for 1951 in the following part of this opinion.

The Secretary's second contention is that, regardless of whether his records are statutorily inviolate or not, the claimant has offered insufficient affirmative evidence to prove that Mr. White had enough self-employment income to get social security coverage in 1951. And it is true that she admits she has no evidence to offer except the phrase "NOTA-

RY FEES FILING REPORTS 2,756.67" found on page 2 of Mr. White's 1951 1040 income tax form. However, I believe that this phrase when read with the rest of the tax return does provide convincing evidence that Mr. White did have substantial self-employment income in 1951. "NOTARY FEES FILING REPORTS" obviously refers to self-employment income. "FILING REPORTS" may be somewhat ambiguous on its face but in connection with "NOTARY FEES" certainly should put one on notice that it probably was self-employment income. Certainly "NOTARY FEES" could be nothing else. And while one might be employed on a salary by another to file reports one would hardly report that salary as "FILING REPORTS". It would be shown as salary from an employer. It was not shown under salaries, wages, etc. but under the schedules of income from sources other than salaries, actually "Schedule G—income from estates, trusts, and other sources". And in Item 2 of the return where wages, salaries, etc. are listed the words "SELF EMPLOYED" have been typed in. If Mr. White had been a clerk "FILING RE-PORTS" and had received a salary for that, he certainly would have reported it in Item 2 of the return where salaries are shown and not under Schedule G—income from estates, trusts and other sources as "NOTARY FEES FILING REPORTS".

Because of this convincing evidence that Mr. White did have substantial self-employment income in 1951, and in the absence of any evidence to the contrary, I am of the opinion that the Secretary's refusal to change his records to include that self-employment income is not supported by substantial evidence, and I must therefore reverse the decision of the Secretary and require that his records be amended to show that Mr. White did meet the earning requirements for coverage in 1951 and that his widow is now eligible to draw her widow's benefits upon payment of the 1951 social security tax.

An order will be so entered.