William F. MALONEY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. C 63–889.

United States District Court
N. D. Ohio, E. D.

Nov. 30, 1964.

N. C. Syracopoulos, Akron, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Atty., and Harry Pickering, Asst. U. S. Atty., Cleveland, Ohio, for defendant.

GREEN, District Judge:

This is an action under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) to review a "final decision" of the defendant Secretary of Health, Education and Welfare. Both parties have moved for summary judgment.

The question before the Court is whether plaintiff has met the special earnings requirements of the Social Security Act for purposes of establishing a period of disability or for disability insurance benefits. In order to meet such requirements a claimant must have twenty quarters of coverage in the 40-quarter period ending with the quarter in which disability is alleged to have begun, 42 U.S.C.A. §§ 416(i) and 423.

It is agreed by both parties that if plaintiff's earnings during the year 1956 are included in the period of coverage plaintiff is entitled to consideration for disability benefits, as he had 19 quarters of coverage in the relevant 40 quarters, without the inclusion of 1956. If the year 1956 is excluded, plaintiff does not meet the 20/40 minimum of the Act, and is not entitled to participate in the Social Security program.

Plaintiff's initial application to establish a period of disability was denied upon the administrative level. Plaintiff requested a hearing in the matter, and on February 28, 1963 the hearing examiner rendered a decision finding plaintiff qualified for disability insured status. The Appeals Council, on its own motion, decided to review the hearing examiner's decision. On September 24, 1963 the Appeals Council issued a decision wherein it reversed the decision of the hearing examiner. The Appeals Council adopted the hearing exam-

iner's findings of fact, but reversed on a question of law involving statutory interpretation.

The Court has determined not to restate the relevant facts of this action nor to embody in full text the relevant law. It is the Court's belief that the comprehensive opinion of the hearing examiner is more than an adequate source for these materials, and portions thereof are set forth hereinafter.

The key issue is whether the form 1040-A tax return for the year 1956 filed by plaintiff in 1957, followed by the filing of an amended 1956 return in February, 1962, is a "tax return" within the meaning and intent of 42 U.S.C.A. §§ 405(c) (4) (C) and 405(c) (5) (F).

There is no dispute that the 1956 return was made on a wage-earner's card form and that the amended return filed in 1962 was a properly executed tax return for 1956 as a self-employed person.

In this regard, however, the following findings of the hearing examiner must be borne in mind:

"In early April 1957 his brother, Tom, took the Claimant to the Internal Revenue Bureau office. The Claimant regards himself as totally blind and it is difficult for him to travel around by himself. (He claims to be totally blind in both eyes since 1953 when he was in an automobile accident. In 1957, as now, he was too blind to read print.) The Claimant took with him his statement of earnings from Westmoreland, a subsidiary of the Aluminum Company for 1956. He showed his statement of earnings to a clerk at the office of Internal Revenue. He explained the type of job he had and that he was self-employed. He then asked the clerk if he would give him the appropriate forms.

"On the statement of earnings he showed the clerk, he recalls, it showed the amount he earned and, he believes, the type of employment. (In any event he stated the type of employment: namely, commission sales-

man.) The Claimant positively recalls saying he was self-employed and showing the clerk the statement of earnings. He asked the clerk to help him fill out the form; but the clerk declined to do so; and instead handed him a form saying in effect 'There's nothing to it. Just have some one fill it out at home.' That is his recollection of what happened there at that time. He took it for granted it was a self-employed tax form. There is no doubt in his mind he was self-employed; nor was there any doubt then. He intended to fill out a self-employment return. (The form he was given—as he now realizes—was Form 1040A for *wage* income (Exhibit 19). (He had worked for this company only for the year 1956, having started in late 1955. Before then he had never been self-employed. He believes he had never seen a self-employment tax form.)

"He took the form home; his father filled it out for him shortly thereafter; and it was sent in by mail. (He testified that he had had to sign a lot of papers in the Hospital, etc. and 'half of the time' he never had papers read back to him; he had to depend on others because of his blindness; he would just sign the papers and 'that's it'.)

"His father filled it out about a week later. He recalls that it was in the late evening. He brought the form in an envelope to his dad; and he asked his dad to fill it out for him. He does not recall exactly who mailed it. He told his father that this was the form they gave him. He gave his father the statement of earnings. His father filled out the form; he signed it; and it was mailed. (Previously all he had ever been was an 'employee'. He had no 'business' experience.)

Mr. Maloney, Sr., the Claimant's father, testified that his son's account was substantially correct; that he, the father, did fill out the

form, taking the information from the slip his son gave him, (he does not know what happened to it); that he, himself, the father, is an employee and has no familiarity with self-employment tax forms; that he just copied what his son gave him; and that he knows little about tax law but he did not think it strange that no tax was due (even though he knew his son was self-employed) because he knew in a vague way that blind persons get special exemptions. (The after-hearing note from the brother, Tom, is also duly noted, being Exhibit 32, and reads as follows: 'I, Thomas A. Maloney took my brother Bill to the Internal Revenue Office in 1957. I don't remember what my brother said nor do I remember what the clerk said, as it was a long time ago and I was quite young at the time. Sincerely yours, Thomas D. Maloney.')

\*  \*  \*  \*  \*  \*

"He filed a return within the time limitation. He meant to file a SE return, but he unwittingly filled out a 'wages' form. There never was any doubt in his mind that he was self-employed nor is there any doubt that he intended to file a self-employment return. He was in fact self-employed. The return which he filed shows the correct amount and the correct employer; and the amount is far in excess of $400. Subsequently he did file a proper self-employment tax return, but this proper one was not within the time limitation (as the prior one was). There were various, quite special, extenuating circumstances; his blindness, his having been misled, as I believe him credibly to have testified, by the clerk at Internal Revenue (regardless of whose fault it may have been) and his having to rely on a third person, his father, for filling out the return."

Section 405(c) (4) (C) of the Social Security Act provides that the absence of an entry in the Secretary's records as to self-employment income shall be conclusive evidence that no such income was derived unless it is shown that the claimant filed "a tax return of his self-employment income for such year" within three years, three months, and fifteen days following such year, in which case the income is to be included.

Section 405(c) (5) (F) of the Social Security Act provides that after the three year, three month, fifteen day period the Secretary's records may be changed to include "any omitted item of wages or self-employment income" to conform the records to "tax returns *or portions thereof* (including information returns *and other written statements*) filed with the Commissioner of Internal Revenue" pursuant to the income tax statutes.

The hearing examiner, in holding that plaintiff had filed a "tax return" in 1957 within the statute, concluded:

"I take the law to require an interpretation which is sound and sensible in the light of all the facts, not one which is strained in its technicalities or dryly legalistic, so as to defeat a fundamental right when there is a showing of *bona fides*, of a willingness and desire to comply, a disclosure in the timely tax return of the relevant information, and a factual basis which shows the truth to be that he was indeed self-employed and that he filed a return on time in which he gave salient information about his income, even though by an understandable stumble it was on a 1040-A Form."

In reaching its determination, the Appeals Council construed the provisions of the Social Security Act to require the filing of a tax return from which self-employment tax could be computed, by the inclusion of the schedule of expenses and business deductions, such return being Form 1040 as of 1956.

This Court is of the opinion that the view of the law taken by the hearing examiner is more in accord with the liberal objectives of the remedial legislation here under consideration, which legisla-

tion should be construed in favor of the claimant. Randall v. Flemming, 192 F. Supp. 111, 120 (D.C.W.D.Mich., 1961). The Court further believes that the opinion of the Appeals Council embodies a restrictive interpretation not warranted by the statute in light of the particular facts herein.

As this Court reads the opinion of the Appeals Council, therein primary consideration is given to the phrase "a tax return of his self-employment income," as the same is used in § 405(c) (4) (C). This Court believes that equal consideration must be given to the much more flexible language of § 405(c) (5) (F) which permits the inclusion of omitted items of self-employment income to conform to a tax return, a *portion thereof,* or a *written statement* filed with the Commissioner of Internal Revenue. In this case, the Form 1040–A return filed in 1957 was a portion of the properly filed amended return of 1962, the difference being omission of items of expense in 1957. The basic income reported on both returns was the same. The taxable income differed.

It is this Court's conclusion that the interpretation of the statutes in question by the Appeals Council was overly restrictive, and that the opinion as entered by the Hearing Examiner was correct as to the points covered therein. The Court is also of the opinion that the 1957 return was "a portion" of a tax return within the meaning and intent of 42 U.S.C.A. § 405(c) (5) (F).

The decision in Martlew v. Celebrezze, 320 F.2d 887 (1963) is relied upon by defendant. That case is distinguishable on its facts by the absence of extenuating circumstances such as exist herein. Insofar as it can be said that it holds a view of the law contrary to that expressed herein, this Court respectfully declines to follow the same under the facts of this case.

In the case of White v. Celebrezze, 226 F.Supp. 584 (D.C.E.D.Va., 1963) the district court in reviewing the decision in the Martlew case has taken a similar position to that taken by this Court relative to the restrictive interpretation placed upon the language of § 405(c) (5) (F). The Court therein stated at page 588:

"I cannot agree with the Martlew case in this regard. I believe that the language of § 405(c) (5) (F) is broader than that of § 405(c) (4) (C) because it specifically mentions 'portions' of a tax return and 'other written statements' as bases for changing the Secretary's records rather than referring to the tax return as a whole as § 405(c) (4) (C) does."

The decision of the defendant is reversed with instructions to allow plaintiff's claim for coverage and the cause is returned for an administrative determination of the remaining questions of disability.