**Henry YODER, Plaintiff-Appellee,**

**v.**

**Patricia Roberts HARRIS, Secretary of Health, Education, and Welfare, Defendant-Appellant.**

**No. 79–1660.**

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 29, 1981.

Decided June 10, 1981.

James P. Buchele, U. S. Atty., Kenneth L. Weltz, Asst. U. S. Atty., Wichita, Kan.,

Randolph W. Gaines, Chief of Litigation, and A. George Lowe, Atty., Dept. of Health, Education, and Welfare, Office of the General Counsel, Baltimore, Md., for defendant-appellant.

John T. Suter and Michael R. O'Neal of Hodge, Reynolds, Smith, Peirce & Forker, Hutchinson, Kan., for plaintiff-appellee.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The Secretary of Health, Education, and Welfare appeals a decision of the district court that requires crediting Henry D. Yoder with self-employment income for the years 1962 through 1971 for social security purposes. The issue on appeal is the correctness of the trial court's determination that information on certain United States Information Returns, Forms 1099, filed by various farm cooperatives showing payments to Yoder, qualify as tax returns filed with the Commissioner of Internal Revenue for Social Security Act purposes under 42 U.S.C. § 405(c)(5)(F).

By agreement the case was submitted on the pleadings, briefs, and certified transcript of the record before the Social Security Administration. Yoder sought to establish his eligibility for medicare benefits. Review disclosed that Yoder's social security earnings record contained no entries from 1961 through 1973 and that he had not filed United States income tax returns for the years 1962 through 1974. At the time of his application, Yoder was being audited by the Internal Revenue Service (IRS) which ultimately required him to file delinquent tax returns for all of those years. Both parties apparently agree that 42 U.S.C. § 405(c) prohibits use of the delinquent income tax returns to credit Yoder's account with self-employment income for the years 1962 through 1971 since such returns were not timely filed.

Yoder claims to have been a self-employed dairy farmer between 1964 and 1971, and various farm cooperatives filed with the IRS timely United States Information Returns, Forms 1099 for those years showing patronage dividends paid to Yoder. The Social Security Administration held the Forms 1099 do not constitute tax returns of self-employment income under section 205(c)(5)(F) of the Act, 42 U.S.C. § 405(c)(5)(F), since they show only gross amounts paid to Yoder and do not establish that such amounts constituted net self-employment income. Upon review, the district court concluded the language in section 405(c)(5)(F), permitting the Secretary to amend his records to conform with "tax returns or portions thereof (*including information returns* and other written statements) filed with the Commissioner of Internal Revenue," is sufficiently broad to include the Forms 1099 filed by the farm cooperatives. (Emphasis added.) It reversed the final decision of the Social Security Administration and ordered that Yoder's earning records for the years 1964 through 1971 be credited with self-employment income in the amounts shown on the Forms 1099. This appeal followed.

The Secretary is required by 42 U.S.C. § 405(c)(2)(A) to "establish and maintain records of the amounts of . . . self-employment income derived by, each individual and of the periods in which . . . such income was derived." An individual's records are available to him and may be corrected if application is made within three years, three months, and fifteen days after the year in question. 42 U.S.C. §§ 405(c)(1)(B), 405(c)(4). However, once that time limitation has expired—as it has in this case—section 405(c)(5)(F) provides that the Secretary

"may change or delete any entry with respect to wages or self-employment income in his records of such year for such individual or include in his records of such year for such individual any omitted item of wages or self-employment income but only—

.        .        .        .        .

"(F) to conform his records to—

(i) tax returns or portions thereof (including information returns and other written statements) filed with the Commissioner of Internal Revenue.

.        .        .        .        .

"except that no amount of self-employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) shall be included in the Secretary's records pursuant to this subparagraph."

If there has been no timely correction of the Secretary's records and no filing of tax returns, the Act creates a conclusive presumption that claimant had no self-employment income. 42 U.S.C. § 405(c)(4)(C).

The trial court relied on *Grigg v. Finch*, 418 F.2d 661 (6th Cir. 1969), to hold the parenthetical "including information returns and other written statements" contained in section 405(c)(5)(F) entitles Yoder to have his social security records corrected to reflect information returned on Forms 1099 filed by the farm cooperatives. In *Grigg*, the Secretary denied disability benefits claimed by Harold Grigg, a part-time accordion instructor at the Detroit Conservatory of Music because Grigg's social security records showed quarters of coverage insufficient under 42 U.S.C. § 416(i)(3). The district court held that notwithstanding Grigg's failure to file income tax returns for the years in question, information returns, Forms 1099, filed by the conservatory, which included Grigg's name and social security number and indicated that Grigg had self-employment income from his services at the conservatory, were sufficient to give the Secretary actual or constructive knowledge under section 405(c)(5)(F) that Grigg had self-employment income during those years. The Sixth Circuit agreed stating that

"the 'absence of an entry in the Secretary's records' referred to in § 405(c)(4)(C) means an 'absence' which persists even after inclusions in the Secretary's records allowed by § 405(c)(5)(F), and that the Detroit Conservatory's information returns satisfied the requirements of § 405(c)(5)(F) ('tax returns or portions thereof (including information returns

and other written statements) filed with the Commissioner of Internal Revenue * * *.'), thereby giving the Secretary actual or constructive notice of Grigg's self-employment income for the years 1956 and 1957."

*Id.* at 664.

This view is also supported by *Maloney v. Celebrezze*, 236 F.Supp. 222 (N.D.Ohio 1964), which held that a claimant's tax return erroneously filed on a wage-earner's card form—the claimant should have filed a self-employment return—followed by an amended return filed five years later constituted a timely filed self-employment tax return for purposes of section 405(c)(4)(C). *Maloney* stressed that the phrase "a tax return of his self-employment income" found in section 405(c)(4)(C) must be read in light of the "much more flexible language of section 405(c)(5)(F) which permits the inclusion of omitted items of self-employment income to conform to a tax return, a *portion thereof*, or a *written statement* filed with the Commissioner of Internal Revenue." *Id.* at 225.[1] *See White v. Celebrezze*, 226 F.Supp. 584, 588 (E.D.Va.1963), ("the language of § 405(c)(5)(F) is broader than that of § 405(c)(4)(C) because it specifically mentions 'portions' of a tax return and 'other written statements' as bases for changing the Secretary's records rather than referring to the tax return as a whole as § 405(c)(4)(C) does.")

With respect, we disagree with the interpretations of the language of section 405(c)(5)(F) by those courts. Congress did not insert the modifying parenthetical "including information returns and other written statements" after "portion thereof" unwittingly; rather it purposively drafted section 405(c)(5)(F) to be consistent with the language of section 405(c)(4)(C). Under section 405(c)(5)(F) the Secretary is only permitted to update his records based on information contained in a timely filed tax return or portions thereof, the parenthetical

---

1. The court excused Maloney's error in filing a 1040A wage return rather than a self-employment income return since the IRS apparently gave Maloney, who was blind, the wrong form.

While we agree with the beneficent result in *Maloney*, we do not agree with the court's loose construction of section 405(c)(5)(F).

following "portions thereof" simply explains that portions of timely filed tax returns that may reveal self-employment income include information returns and other written statements. So construed, the language in section 405(c)(5)(F) is equivalent to the language in section 405(c)(4)(C) which requires proof that the claimant "filed a tax return of his self-employment income" in order to rebut the conclusive presumption created by an absence of information in the Secretary's records.

This construction of section 405(c)(5)(F) is consistent with the legislative history of the Act. That history indicates the principal factor in Congress' decision to include self-employed persons in the Social Security system was the development of a workable mechanism for determining earnings. Self-employed persons were not covered by social security prior to 1950 since "there was no agreement on a feasible method of obtaining . . . reports of their income." *Proposed Amendments to the Social Security Act: Hearings on H.R.2892 Before the House Committee on Ways and Means,* 81st Cong. 1st Sess. 1084 (1949) (statement of Dr. Arthur Altmeyer). The Senate Report explained the reasons for extending coverage to the self-employed: "Practicable administrative procedures for coverage of the self-employed have been developed. An individual would report his self-employment income by transferring certain information from the trade or business schedule of his income-tax return to a social-security schedule on the same return." · S.Rep.No.1669, 81st Cong., 2d Sess. *reprinted in* [1950] U.S. Code Cong.Serv. 3287, 3299. The Commissioner for the Social Security Administration, testifying before the House Committee on Ways and Means, stated:

"The self-employed were excluded from the original program largely because, at that time, there was no agreement on a feasible method of obtaining such reports of their income. Subsequent developments have indicated that most self-employed persons can report their income, for purposes of coverage, as a part of their income-tax returns."

*Hearings on H.R.2893 before the House Committee on Ways and Means,* 81st Cong. 1st Sess. 1081, 1084 (1949) (statement of Dr. Arthur Altmeyer).

It is clear from the legislative history that the federal income tax reporting system enabled Congress to extend social security benefits to the self-employed.[2] As the Third Circuit correctly summarized in *Shore v. Califano,* 589 F.2d 1232, 1238 (1978), "the creation of an administratively feasible mode for determining the eligibility of self-employed claimants was a paramount legislative concern in 1950. Reliance on income tax returns was regarded as the only workable plan." Congress accordingly adopted language in section 405(c)(4)(C) providing that the Secretary's records of self-employment income are conclusive after expiration of the statutory time limitation unless it is shown that the claimant filed an income tax return. Consistent language was adopted in section 405(c)(5)(F) which permits the Secretary to conform his records to "tax returns or portions thereof (including [as portions thereof] information returns and other written statements) filed with the Commissioner of Internal Revenue."

■ Forms 1099 filed by the farm cooperatives showing patronage dividends and

2. "Experience gained in the administration of the income-tax law has made it possible to develop adequate methods of meeting problems involved in coverage of the self-employed.

"Reporting: Contributions and benefits would be based on income from self-employment. For both the self-employed person and the Government, the simplest way of reporting such income is as part of the income-tax return.

. . . .

"Net income from self-employment: Net income from self-employment would be determined entirely on the basis of two figures already included in the income-tax return, namely, income from business or profession (Schedule C), and income from partnerships (Schedule E)."

*Proposed Amendments to the Social Security Act: Hearings on H.R.2893 Before the House Committee on Ways and Means,* 81st Cong. 1st Sess. 1081, 1162 (1949) (statement of Dr. Arthur Altmeyer).

interest paid to Yoder do not constitute tax returns or portions thereof under section 405(c)(5)(F). The patronage dividends apparently reflect gross income derived by Yoder from selling milk through the cooperatives and, by definition, reflect amounts paid to Yoder by cooperatives on the basis of quantity or value of business done with the cooperatives, I.R.C. § 1388(a); *see* Treas.Reg. § 1.1388–1(a)(3). Patronage figures do not reflect expenses or losses, thus they fail to establish that Yoder realized *net* self-employment income during each relevant year.[3] Only timely filed income tax returns reporting net self-employment income would provide information relevant to the Social Security Administration in determining whether Yoder has satisfied the requirement of 42 U.S.C. § 416(i)(3)(B) that he have "not less than twenty quarters of coverage during the forty-quarter period" preceding his claim of benefits, a "quarter of coverage" being defined by the Act as "a quarter in which an individual . . . has been credited . . . with $100 or more of [net] self-employment income." 42 U.S.C. § 413(a)(2).

To give effect to the congressional mandate that federal income tax reporting is the only manageable method for accurately ascertaining the income of self-employed claimants in determining eligibility for social security benefits, we hold that Yoder may prove that he had self-employment income during quarters for which the Secretary's records show none only from information filed with timely filed income tax returns.[4] *Accord, Shore v. Califano*, 589 F.2d 1232, 1239 (3d Cir. 1978); *Singer v. Weinberger*, 513 F.2d 176, 177 (9th Cir. 1975); *Martlew v. Celebrezze*, 320 F.2d 887 (5th Cir. 1963).

**3.** I.R.C. § 1402(b) declares the term " 'self-employment income' means the net income from self-employment derived by an individual . . . during any taxable year." *See also id.* § 1402(a).

**4.** We recognize that many wage-earners with low incomes may not file income tax returns yet will be credited with payment of social security taxes from the employer's report on

The order of the district court is reversed with directions to enter an order granting judgment in favor of the Secretary.

REVERSED.

W–2 forms timely filed. Such a case is substantially different from the self-employment reports which depend upon a net income basis and require payment with the filed return or by quarterly estimates filed by the taxpayer. For wage-earners the entry on the W–2 form itself evidences the withholding of tax on the total of FICA wages reported and a like payment by the reporting employer.