Vincent James ACIERNO,
Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commission-
er of Social Security Administra-
tion, Defendant–Appellee.

Docket No. 03–6217–cv.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 16, 2007.

Decided: Jan. 24, 2007.

Sarah Kenney, Kirkpatrick & Lockhart Nicholson Graham LLP (Douglas F. Broder, on the brief), New York, N.Y., for Plaintiff–Appellant.

John M. Kelly, Special Assistant United States Attorney (Roslynn Mauskopf, United States Attorney, Eastern District of New York, Varuni Nelson and Kathleen A. Mahoney, Assistant United States Attorneys, on the brief), New York, N.Y., for Defendant–Appellee.

Before STRAUB and WESLEY, Circuit Judges, and UNDERHILL, District Judge.*

STRAUB, Circuit Judge.

Plaintiff–Appellant Vincent James Acierno appeals from an August 18, 2003 judgment of the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge)* granting judgment on the pleadings and administrative record in favor of Defendant–Appellee Jo Anne B. Barnhart, the Commissioner of Social Security. The Commissioner originally denied Acierno's claim for social security dis-

ability benefits on the ground that he was not "insured" under the Social Security Act, 42 U.S.C. §§ 301–1397jj, as amended. *See* 42 U.S.C. § 423(c)(1) (requiring and defining insured status). On judicial review of the Commissioner's denial, Acierno claimed that he lacked insured status only because his mental illness prevented him from filing his tax returns within the time period set forth at 42 U.S.C. § 405(c)(1)(B), (c)(4), and that the Commissioner committed an error of law by failing to toll the limitations period due to his affliction. In an unreported decision, the District Court concluded that the doctrine of equitable tolling was inconsistent with the congressional intent animating § 405(c)(1)(B), (c)(4) and therefore dismissed Acierno's complaint.

The precise issue on appeal is whether the limitations period set forth at § 405(c)(1)(B), (c)(4) may be equitably tolled. While Acierno's personal circumstances are sympathetic and the result we reach today is harsh, the history, text, and structure of § 405(c) compel us to hold that equitable tolling does not apply to that provision. Only Congress can amend the statute to provide otherwise.

## BACKGROUND

### I. *Social Security Eligibility*

An individual's eligibility for social security disability benefits depends on how much he has worked and earned in the 10 years prior to applying for benefits. Those whose work and income history qualify them for coverage achieve "insured" status under the Social Security Act. 42 U.S.C. § 423(a)(1)(A), (c)(1). As is relevant here, to achieve such status, one must accumulate 20 or more calendar

---

* Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation.

"quarters of coverage" within the 40 calendar quarters prior to filing for benefits. 42 U.S.C. § 423(c)(1)(B)(i). This is known as the "20/40 Rule." A "quarter of coverage" is a period of three months during which one earns a certain amount of money in either wages or self-employment income.[1] 42 U.S.C. § 413(a).

In order to keep track of who qualifies for coverage, the Commissioner of Social Security must maintain records of the wages and self-employment income earned by each individual assigned a social security number. 42 U.S.C. § 405(c)(2)(A). In the case of wage earners, the Commissioner typically obtains this information from W–2 forms filed by the employer. *See Yoder v. Harris*, 650 F.2d 1170, 1174 n. 4 (10th Cir.1981). Regarding the self-employed, the Commissioner gleans this information from tax returns. *Id.* at 1173. The absence of any entry in the Commissioner's records is evidence that an individual earned no income for the period in question, and therefore did not earn any quarters of coverage. 42 U.S.C. § 405(c)(3).

If the Commissioner's records are incorrect, a person has a limited time within which to correct them. Generally, a person must act to correct errors within three years, three months, and 15 days following the end of the calendar year to which the errors relate. 42 U.S.C. § 405(c)(1)(B), (c)(4). After that limitations period, if the Commissioner's records show no entry for wages paid, those records are presumptive evidence that the person received no wages during the year in question. 42 U.S.C. § 405(c)(4)(B). Importantly, if after the end of the limitations period the Commissioner's records show no entry for self-employment income, those records are

*conclusive* evidence that the person received no such income during the year in question, *unless* the person can show that he filed a tax return for the relevant year within the limitations period, or one of a handful of narrow exceptions applies. 42 U.S.C. § 405(c)(4)(C), (c)(5). If the person has filed a tax return within the limitations period, then the Commissioner shall correct her records accordingly. 42 U.S.C. § 405(c)(4)(C).

## II. *Acierno's Illness and Failure to File Tax Returns*

In 1990, Acierno was diagnosed with testicular cancer, for which he received chemotherapy. According to his doctors, as a side effect of his chemotherapy he developed "significant psychiatric problems, including depression, anxiety, and manic behavior" that made it difficult for him to "attend to his own personal affairs" and robbed him of the ability to "understand and/or perform the obligations of everyday life."

Although Acierno managed to work for some portions of 1992 and 1993, the record offers conflicting evidence as to whether he was a wage earner or self-employed. His tax returns for those years reflect his income as "self-employment fees." Further, in communications with the Social Security Administration, he repeatedly set forth that he was self-employed at that time. However, at his hearing before an administrative law judge, he testified that he was a wage earner during 1992 and 1993.

In either event, Acierno did not file his 1992 and 1993 tax returns until December 1997, after the limitations period expired as to both years. As a result, the Commissioner recorded no income for Acierno dur-

---

1. Each year the Commissioner sets the required amount by or on November 1. 42 U.S.C. § 413(d)(2).

ing those years and awarded him no quarters of coverage. Acierno claims that he failed to timely file his tax returns because of the mental illness from which he was suffering, which became so acute in 1993 that he was ·hospitalized for manic and paranoid behavior. He also claims that he did not timely file because his accountant, without considering the consequences for his social security eligibility, advised his wife that Acierno did not need to consider any "statute of limitations" for filing tax returns since he would not be requesting a refund and since, as a practical matter, it would take a long time to reconstruct the necessary information with little or no input from Acierno, who was too ill to assist.

By the close of 1996, Acierno's physical and mental condition had deteriorated to the point where he could no longer work, and shortly thereafter he filed for social security disability benefits. After a hearing, an administrative law judge denied his application on the ground that he was not insured under the Social Security Act because he did not satisfy the 20/40 Rule. The administrative law judge determined that Acierno was self-employed in 1992 and 1993; he failed to file his 1992 and 1993 tax returns within the limitations period, which created a conclusive, statutory presumption that he did not earn any self-employment income during those years; as a result, he failed to accrue any quarters of coverage for those years; and due to that failure, he had not accrued the required 20 quarters of coverage within the last 40 calendar quarters. Acierno subsequently sought review by the Social Security Administration Appeals Council, which denied his request.

### III. *The District Court Decision*

Proceeding *pro se*, Acierno sought review of the agency's denial in the District Court for the Eastern District of New York. In September of 2002, the Commissioner moved for judgment on the plead-ings and the administrative record, pursuant to 42 U.S.C. § 405(g). Despite multiple extensions and at least one warning that the District Court would decide the pending motion if Acierno failed to submit opposition papers, Acierno failed to file responsive papers. In August of 2003, the District Court decided the motion unopposed.

The District Court first considered whether the administrative law judge erroneously found that Acierno was self-employed during 1992 and 1993. Although there was some evidence to the contrary, the District Court concluded that substantial evidence supported the administrative law judge's factual finding.

The District Court next considered whether the administrative law judge committed an error of law by refusing to equitably toll the time limitation set forth at 42 U.S.C. § 405(c)(1)(B), (c)(4). For reasons apparent from the text, structure, and history of the statutory scheme, the District Court concluded that applying equitable tolling to § 405(c)(1)(B), (c)(4) would frustrate the congressional intent behind those provisions. Accordingly, the District Court granted the Commissioner's motion and entered judgment in her favor.

Acierno timely appealed, and we appointed present counsel to represent him. Before us, Acierno urges that he was a wage earner in 1992 and 1993, and that even if the administrative law judge's finding of self-employment stands, equitable tolling applies to § 405(c)(1)(B), (c)(4).

### DISCUSSION

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir.2000). "We review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's deci-

sion and whether the Commissioner applied the correct legal standard." *Pollard v. Halter,* 377 F.3d 183, 188 (2d Cir.2004) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).

■ Before turning to the main issue presented here, we easily conclude that substantial evidence supports the Commissioner's determination that Acierno was self-employed in 1992 and 1993. Acierno's belated tax returns for those years clearly categorize his income as "self-employment fees," and on at least two occasions Acierno set forth in his correspondence with the Social Security Administration that he was self-employed in 1992 and 1993. These facts provide ample support for the Commissioner's finding that Acierno's 1992 and 1993 income stems from his self employment, notwithstanding Acierno's contrary hearing testimony. *See Pollard,* 377 F.3d at 188 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)).

■ We thus confront the following state of affairs: although Acierno claimed self-employment income in 1992 and 1993 sufficient to qualify him as "insured," the Commissioner's records do not reflect that income because Acierno failed to file his tax returns within the three-year, three-month and 15-day limitations period set forth at § 405(c)(1)(B), (c)(4). Accordingly, there exists a conclusive presumption that Acierno earned no income—and no quarters of coverage—in 1992 and 1993, unless § 405(c)'s limitations period can be equitably tolled.

■ In order to read an implied equitable tolling provision into a statute that contains no such express provision, "[w]e must determine ... whether equitable tolling is consistent with Congress' intent in enacting" the statutory scheme. *Bowen v. City of New York,* 476 U.S. 467, 480, 106

S.Ct. 2022, 90 L.Ed.2d 462 (1986). While we have described the Social Security Act as "a remedial statute, to be broadly construed and liberally applied," *Haberman v. Finch,* 418 F.2d 664, 667 (2d Cir.1969), other more specific considerations lead us to conclude that § 405(c)(1)(B), (c)(4) may not be equitably tolled.

Most important is the history of the provisions that regulate the manner in which self-employed individuals report their work and income figures to the Social Security Administration. Before 1950, self-employed people were not eligible for social security because Congress could not agree on a reliable means of accurately determining their earnings and, in turn, whether they were insured within the meaning of the statute. *Yoder,* 650 F.2d at 1173. This was because, unlike wage earners, a claim of earnings by a self-employed person was not independently verifiable through the W–2 form submitted by an outside employer. *Hollman v. Dep't of Health and Human Servs.,* 696 F.2d 13, 17 (2d Cir.1982); *see also Yoder,* 650 F.2d at 1174 n. 4.

Congress eventually decided to extend social security benefits to the self-employed on the understanding that self-employed people would report their work and earnings history on a separate schedule as part of their income tax return. *Yoder,* 650 F.2d at 1173. But in order to "protect[ ] the government from spurious or merely inaccurate and unverifiable claims [of coverage] based on after-the-fact evidence," Congress substantially limited the manner in which self-employed individuals could correct the information that they provided to the government. *Hollman,* 696 F.2d at 17 (recognizing that "Congress saw fit to impose a stricter standard for amendment of [the] records" of the self-employed, and "acknowledg[ing] the validity of the policy considerations inherent" in § 405(c)(4)(C)). This history illustrates

that Congress, confronted with the specific problem of ensuring that records of the self-employed were reasonably accurate, sought to limit the extent to which those records could be altered and likely would not have intended for equitable tolling to apply.

Moreover, in several ways, the text and structure of § 405 reflect Congress's desire to limit the time and manner in which a self-employed person may amend the Commissioner's records. First, once the period for amending the Commissioner's records has passed, the absence of any entry in those records for a wage earner is only "presumptive" evidence that he earned no wages. By contrast, the absence of an entry for a self-employed person is "conclusive" evidence that he earned no income. 42 U.S.C. § 405(c)(4)(B)-(C). Second, Congress provided 10 exceptions to the limitations period and indicated that these exceptions are exclusive by setting forth that they consist "only" of the specifically enumerated circumstances. None of those circumstances requires a balancing of the equities; instead, they are essentially technical in nature. *See* 42 U.S.C. § 405(c)(5). Third, Congress provided for one exception that might apply here—allowing the Commissioner to amend his records to conform to a later-filed tax return—but specifically disallowed this possibility for the self-employed unless the tax return was filed at some point within the limitations period. 42 U.S.C. § 405(c)(5)(F). Given that the statute provides an exclusive list of exceptions and reiterates, in various and specific forms, the limits imposed on amending records of the self-employed, we believe it is inconsistent with an open-ended implied tolling provision. *See United States v. Brock-*

*amp,* 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (holding that statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate" that equitable tolling did not apply).

Moving beyond the history and language of the statute, we find further support for our conclusion in the fact that ascertaining whether an individual is "insured" within the meaning of the Social Security Act is a determination not "characterized by case-specific exceptions reflecting individualized equities." *Brockamp,* 519 U.S. at 352, 117 S.Ct. 849. Instead, the administrative law judge's role in this regard is rather mechanical, involving primarily the counting of quarters of coverage, which are determined by reference to how much an individual earned over a three-month period. Were we to introduce into this function the need to consider an array of equitable factors, we would effectively create a new and burdensome level of administrative judgment that conflicts with the agency's technical role in determining insured status. Taken together, the above considerations lead us to conclude that implying an equitable tolling provision into § 405(c)(1)(B), (c)(4) would conflict with Congress's intent in enacting that provision.[2]

Acierno contends that because we previously found an implied equitable tolling provision within 42 U.S.C. § 405(g) and applied it in circumstances involving mental illness, *see Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir.1991), the same result should follow here. We disagree. Section 405(g) is significantly different from § 405(c)(1)(B), (c)(4). Section 405(g) allows an individual to seek judicial review

---

**2.** We have discovered one district court case holding that equitable tolling applies to § 405(c). *See Smith v. Shalala,* 910 F.Supp. 152 (D.N.J.1995). We respectfully disagree

with *Smith's* reasoning and conclusion, largely because the case fails to focus on § 405(c)'s history, text, and structure in determining

of the Commissioner's decision within 60 days of the date that notice of the decision is mailed to him. Section 405(g), unlike § 405(c)(1)(B), (c)(4), specifically allows the Commissioner to toll the 60–day limitations period and to do so indefinitely, which indicates Congress's "clear intention to allow tolling in some cases." *Bowen,* 476 U.S. at 480, 106 S.Ct. 2022. Moreover, unlike § 405(c)(1)(B), (c)(4), the history of § 405(g) does not indicate that Congress, acting in response to a specific concern, intended to severely limit the time in which a claimant could seek judicial review. Finally, § 405(g) does not contain the exclusive language set forth in § 405(c)(5). 42 U.S.C. § 405(c)(5) (setting forth that exceptions to limitations period exist, "but only" under certain circumstances). Accordingly, our conclusion as to § 405(g) does not control here.

As we have noted, the result in this case seems harsh to us: a man whose mental illness prevents him from working, and who in fact qualifies for disability coverage, nonetheless receives no disability benefits because he filed his tax returns too late—an error due in large part to his affliction. However, today's outcome is driven by factors that bind us, namely, the history, text, and structure of § 405(c). The decision whether to amend the statute to allow equitable tolling in appropriate cases, such as this one, rests exclusively with Congress.

## CONCLUSION

For the reasons set forth above, we hold that equitable tolling does not apply to the limitations period contained in 42 U.S.C. § 405(c)(1)(B), (c)(4), and we AFFIRM the judgment of the District Court.

whether equitable tolling comports with Con-