Esmie E. JAMES

v.

Michael J. ASTRUE, Commissioner of Social Security.

Civil Action No. 06–11818–RGS.

United States District Court,
D. Massachusetts.

Oct. 10, 2007.

Andrew Kisseloff, Kevin James Terrazas, Hale & Dorr Legal Services, Roger J. Bertling, Jamaica Plain, MA, Paul R. Collier, III, Cambridge, MA, for Esmie E. James.

Gina Y. Walcott–Torres, United States Attorney's Office, Boston, MA, for Michael J. Astrue.

## MEMORANDUM AND ORDER ON AN APPEAL OF THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

RICHARD G. STEARNS, District Judge.

Esmie James, the surviving divorced wife of Nicholas James, brought this appeal after the Social Security Administration (SSA) denied her application for widow's insurance benefits. The SSA ruled that James did not meet the 10–year duration of marriage requirement of 42 U.S.C. § 416(d)(2). James's initial application was rejected by the SSA on June 19, 2005, and again on September 28, 2005, after James filed a request for reconsideration. While acknowledging that her marriage had been dissolved fifty-seven days short of the required ten years, James argued that an equitable exception should be made in her case because of a history of spousal abuse. On April 26, 2006, James's appeal was heard by Administrative Law Judge (ALJ) Robert J. Kelly. On June 8, 2006, ALJ Kelly, in a written decision, agreed

with the Commissioner that sympathies aside,[1] the Social Security Act did not provide for the equitable tolling of the 10–year eligibility requirement. On September 1, 2006, the Appeals Council denied James's request for further review, affirming the ALJ's opinion as the final decision of the Commissioner.

On October 4, 2006, James sought review of the Commissioner's decision in the district court pursuant to 42 U.S.C. § 405(g). On June 7, 2007, the Commissioner filed a cross-motion seeking an affirmance of the ALJ's decision. The court heard oral argument on September 20, 2007. For the reasons explained below, the Commissioner's decision will be affirmed.

## STATEMENT OF FACTS

James is the sixty-six year old widow of Nicholas James. Nicholas died on February 21, 2000. James met Nicholas in Jamaica when she was fourteen years old. After an outing at an amusement park, Nicholas plied James with alcohol, drove her back to his home, and raped her. Thereafter, Nicholas would regularly search out James and force her to have sex. Nicholas exploited his position as a police constable to intimidate James from complaining about the repeated rapes. Eventually, James found herself living in Nicholas's house. James gave birth to their first child in 1957, when she was seventeen. She married Nicholas in Jamaica on December 12, 1964. The abusive treatment continued after the couple immigrated to the United States. Nicholas would abuse James emotionally and physically "[a]nytime he feel like." James never called the police because if she dared to touch the phone "he would beat the life out

---

1. The ALJ described James's testimony as a "heart-rendering [sic] tale of abuse."

of [her]." Over the years, Nicholas made four attempts on James's life.

The final attempt involved a threat by Nicholas to stab James with a switchblade knife. After wrapping his arms around James's neck, Nicholas said "[t]his is the last day your [sic] going to live. I'm going [to] kill you." James's adolescent daughter Beverly rescued James by hitting Nicholas over the head with a skillet. Immediately following this incident, James separated from Nicholas and filed for divorce. The divorce became final on October 16, 1974. Although James lived with Nicholas for more than eighteen years, their marriage ended fifty-seven days short of what would have been their tenth wedding anniversary. James never remarried.

## DISCUSSION

■ A surviving spouse is entitled to widow's insurance benefits under the Social Security Act if she is either the widow or the "surviving divorced wife" of a qualified wage earner.[2] A "surviving divorced wife" is "a woman divorced from an individual who has died, but *only* if she has been married to the individual for a period of 10 years immediately before the date the divorce became effective." 42 U.S.C. § 416(d)(2) (emphasis supplied). *See also* 20 C.F.R. § 404.336(a)(2). At the time of her application, James met the eligibility criteria for widow's insurance benefits, with the exception of the 10–year duration of marriage requirement.[3] Consequently, her application for benefits was denied.

■ The standard of review is highly deferential to the Commissioner. An ALJ's findings are deemed conclusive if they are supported by substantial evidence. *Manso–Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). "Substantial evidence ... means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence.... [The] question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision...." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998). The Commissioner's findings, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).

■ James urges this court (as she did the ALJ) to carve out an equitable domestic abuse exception to the 10–year eligibility requirement of § 416(d)(2).[4] The request is not as simple as it may seem. Courts "should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by statutory text." *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 107

---

**2.** Although the statute is written in gender-specific terms, the surviving spouse provision applies equally to (male) widowers.

**3.** In addition to the duration of marriage requirement, a surviving divorced wife must establish that: (1) her former husband died while fully insured; (2) she has not remarried; (3) she has attained age 60 (or age 50, if she suffers from a qualified disability); and (4) she is either not entitled to old-age insurance benefits or that these benefits are less than those paid by the deceased wage earner's primary insurance. *See* 42 U.S.C. § 402(e).

**4.** In the alternative, James asks this court to remand the case with instructions to the ALJ to exercise equitable powers. It is not clear as a constitutional matter that this court can delegate its Article III powers to a non-Article III court.

L.Ed.2d 782 (1990). While the First Circuit has described the Social Security Act as a "remedial statute, to be broadly construed and liberally applied in favor of beneficiaries," *McCuin v. Sec'y of Health and Human Servs.*, 817 F.2d 161, 174 (1st Cir.1987), courts are not at liberty to read exceptions into acts of Congress that are contrary to an express legislative intent. *Armacost v. Amica Mut. Ins. Co.*, 11 F.3d 267, 271 (1st Cir.1993) ("Only when the legislature sounds an uncertain trumpet may the court move in to clarify the call. But when the call is clear and certain ... we may not consider whether the statute as written comports with our ideas of justice, expediency or sound public policy. In such circumstances that is not the court's business.").

Section 416(d)(2) of the Social Security Act contains no permissive language authorizing the Commissioner (or the district court) to consider extenuating circumstances (such as domestic abuse) in applying its 10–year eligibility rule. As a result, courts have refused to make exceptions in cases where the claimant missed the eligibility requirement by an even more compelling margin than James. *See Moon v. Shalala*, No. 93–CV–1267 RWS, 1994 WL 740899 (N.D.N.Y. Oct.4, 1994) (claimant was eighteen hours short of the eligibility requirement); *Contreras v. Sullivan*, No. 88–207, 1990 WL 357098 (D. Ariz. April 3, 1990) (claimant missed the requirement by one day); *Foster v. Chater*, 70 F.3d 111, 1995 WL 686221 (4th Cir.1995) (per cu-riam) (claimant, whose divorce had become final one month prior to the 10–year deadline, did not satisfy the requirement even though she and the deceased had cohabited for three years prior to their civil marriage).

The statutory test as written has a ready virtue: it is easily applied. A Social Security administrator need only count the number of days from a couple's wedding to the entry of their divorce decree to determine a claimant's eligibility. To inject equitable considerations into this mechanical test would introduce fluidity where Congress intended certainty, and would likely (ironically) produce inequitable results.[5] It would also impose an unwonted and essentially standardless burden of discretionary decision-making on Social Security officials, and ultimately the courts, in sorting out pleas for individual exceptions. *See Heckler v. Day*, 467 U.S. 104, 116, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984).

James argues that *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), as a general matter, supports the application of the equitable tolling doctrine to the substantive requirements of the Social Security Act. The reliance on *Bowen*, however, is misplaced. In *Bowen*, the Supreme Court applied equitable tolling to preserve the claims of members of a class who had been denied disability benefits because of an illegal internal policy followed by the Secretary of Health and Human Services and who had

---

**5.** Inequitable results because a fixed rule is replaced with one of uncertain application: should a fifty-seven day shortfall always be excused where the claimant is a victim of domestic abuse or does the relative severity of the abuse excuse a claimant in one fifty-seven day case and not another? And why fifty-seven days? Why not one hundred days, or five years in truly egregious cases? Are Social Security administrators and ALJs equipped to make distinctions between "se-vere" and "less severe" cases of domestic abuse? Is the Social Security system capable of investigating the truth about allegations of abuse that are often (as in James's case) decades old? While James, as the ALJ found, happened to be an especially compelling witness, that may not always be the case (as ritual allegations of "cruel and abusive treatment" in contested divorce cases might suggest).

failed to seek judicial review within sixty days of the denial as required by 42 U.S.C. § 405(g). There are, however, significant differences between the filing rule of § 405(g) and the eligibility rule of § 416(d)(2). The 60–day filing requirement of § 405(g) is a procedural rule-a statute of limitations—while the 10–year eligibility requirement of § 416(d)(2) is a substantive rule establishing a predicate qualification for an award of benefits.[6] Moreover, in enacting § 405(g), Congress explicitly authorized the Secretary to waive the 60–day limitations period.[7] It has never granted the Secretary similar discretion with respect to the 10–year eligibility rule of § 416(d)(2). This choice is evidence of a "clear intention [on the part of Congress] to allow tolling in some cases [but not others]." *Bowen,* 476 U.S. at 480, 106 S.Ct. 2022.[8]

Also compelling in *Bowen* was the fact that it was "the Government's [own] secretive conduct [that] prevent[ed] plaintiffs from knowing of a violation of [their] rights." *Bowen,* 476 U.S. at 481, 106 S.Ct. 2022. Historically, courts have invoked equitable tolling to protect otherwise innocent litigants from fraud. *See Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) ("[W]here a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' "), quoting *Bailey v. Glover,* 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874). *See also Doherty v. Teamsters Pension Trust Fund,* 16 F.3d 1386, 1393 (3d Cir. 1994) ("[E]quitable tolling may be appropriate at least where the defendant has actively misled the plaintiff respecting the cause of action, the plaintiff has in some extraordinary way been prevented from asserting his rights, or the plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum."). (Internal citation and quotations omitted). Unlike the case in *Bowen,* there is no allegation of governmental misconduct towards James.

The second case on which James relies is *Smith v. Shalala,* 910 F.Supp. 152 (D.N.J.1995). In *Smith,* the district court applied equitable tolling to the limitations period provided for the filing of corrected proof of income statements by 42 U.S.C. § 405(c). In so doing, the court reinstated the claim of an applicant for benefits whose failure to timely submit the correct-

6. Equitable tolling is a doctrine rarely applied to relieve a litigant from the substantive—as opposed to procedural—limitations of a statute. *See United States v. Brockamp,* 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) ("[S]uch an interpretation [of the limitations periods for tax refund claims] would require tolling not only procedural limitations, but also substantive limitations ... a kind of tolling for which we have found no direct precedent.").

7. Section 405(g) states that an action must be filed "within sixty days ... *or within such further time as the Secretary may allow.*" *Bowen,* 476 U.S. at 472 n. 3, 106 S.Ct. 2022 (emphasis added).

8. Congress did make an exception to the 9–month marriage duration requirement for a surviving spouse where the wage earner's death results from an accident or occurs while he or she is on duty with the uniformed services. 42 U.S.C. § 416(k)(1). That Congress inserted this exception while making no similar exception to the 10–year marriage duration requirement for divorced spouses is evidence of a deliberate legislative choice. *See Brown v. Gardner,* 513 U.S. 115, 120–121, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *United States v. Green,* 407 F.3d 434, 443 (1st Cir.2005).

ed statements the court attributed to the effects of an abusive relationship.[9] The *Smith* decision, however, has been criticized (and accurately so) by the Second Circuit Court of Appeals for ignoring the history, text, and structure of the Social Security Act in reaching the conclusion that an equitable tolling of the § 405(c) limitations period was not inconsistent with the intent of Congress. *See Acierno v. Barnhart*, 475 F.3d 77, 82 n. 2 (2d Cir.2007) (rejecting a request to recognize an equitable tolling exception to § 405(c) based on a claimant's history of mental illness—a "harsh" result, but one dictated by the structure of the Act).[10]

## ORDER

For the foregoing reasons, the decision of the Commissioner denying James's application for widow's insurance benefits is *AFFIRMED*. The Clerk will terminate the appeal and close the case.

SO ORDERED.

---

9. "The Secretary is required to maintain records of wages and self-employment income earned by claimants. During the limitations period of three years, three months and fifteen days following the end of any calendar year, a claimant may submit material to correct any errors in the Secretary's records concerning wages or self-employment, whether of inclusion or omission." *Smith*, 910 F.Supp. at 157 (internal citations omitted). As the *Smith* court acknowledged, the purpose of the limitations provision is "to guard against false claims." *Smith*, 910 F.Supp. at 157.

10. As the Second Circuit noted: "Congress provided 10 exceptions to the limitations period [of § 405(c)] and indicated that these exceptions are exclusive by setting forth that they consist 'only' of the specifically enumerated circumstances. None of those circumstances requires a balancing of the equities; instead, they are essentially technical in nature." *Acierno*, 475 F.3d at 82.