**Emanuel HOLLMAN, Appellant,**

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Appellee.**

**No. 70, Docket 81–6272.**

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1982.

Decided Dec. 6, 1982.

Fredrika V. Miller, New York City, Emanuel Hollman, pro se, for appellant.

Jane E. Booth, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Barbara L. Schulman, Peter C. Salerno, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, and OAKES and WINTER, Circuit Judges.

OAKES, Circuit Judge:

Emanuel Hollman is a seventy-year-old Social Security recipient seeking recalculation of his benefits to reflect self-employ-

ment earnings on which he paid Social Security and income taxes following disallowance of certain business deductions after an Internal Revenue Service investigation and Tax Court decision. The Department of Health and Human Services (Secretary) has refused, arguing that correction of his records is barred by the statute of limitations. Hollman initiated administrative review in 1974 and represented himself until this court appointed counsel and remanded for de novo consideration. The United States District Court for the Southern District of New York, Milton Pollack, Judge, deferred to the Secretary's determination that Hollman's case is not within one of the statutory exceptions to the time limitation for correcting records of earnings. The court also held that mental incompetency does not toll the statute of limitations.[1] We reverse on the first ground.

Congress began including self-employed workers like Mr. Hollman in the Social Security system in 1950 when a practical administrative procedure made it feasible to determine these workers' income. *See Yoder v. Harris,* 650 F.2d 1170, 1173 (10th Cir.1981); *Shore v. Califano,* 589 F.2d 1232, 1237 & n. 14 (3d Cir.1978) (discussing legislative history). The worker files a Schedule SE (Computation of Social Security Self-Employment Tax) with his income tax return Form 1040, transferring the amount of his net earnings from his Schedule C (Profit or (Loss) From Business or Profession). Using this information, the Secretary maintains records from which he computes an eligible worker's social security benefits. 42 U.S.C. § 405 (1976 and Supp. IV 1980).

In 1965, the Secretary determined that Hollman was eligible to receive disability benefits because of extreme vision impairment, complicated by emotional disturbance. Hollman had been self-employed as an accountant and insurance broker, filing timely tax returns reporting his self-em-

ployment income for 1953 and 1954, the years now in question. These tax returns, of course, showed both his gross self-employment income and his net after deduction of business-related expenses. The Secretary, therefore, maintained a record of Hollman as a self-employed worker. It is this record that he seeks to amend.

The basic time limitation period within which earnings records may be corrected or altered is defined by § 205(c) of the Social Security Act, 42 U.S.C. § 405(c)(1)(B), as three years, three months, and fifteen days. Changes, deletions, and inclusions in the SSA records *after* the time limit *may* be made in ten exceptional situations. *Id.* (c)(5)(A)–(J). Inclusions in the SSA record after the time limit *shall* be made if "it is shown that [the claimant] filed a tax return of his self-employment income for such year before the expiration of the time limitation." *Id.* (c)(4)(C).

It is within this framework that we review Mr. Hollman's application to the Secretary on July 11, 1974, to have his record changed to reflect increased self-employment earnings for the disputed years. The Secretary denied the request to recalculate for 1953 and 1954, finding it time barred and not within any of the enumerated exceptions. Applying both the discretionary and the mandatory statutory provisions in § 405(c)(5) and (c)(4)(C), however, we find that the time limitation does not bar the relief Mr. Hollman requests, because he timely filed tax returns reporting gross self-employment income for both 1953 and 1954.[2]

The revisions of Mr. Hollman's net earnings resulted from an Internal Revenue Service audit of his taxes, culminating in a 1962 Tax Court ruling disallowing $1300 of business expenses claimed against self-employment income reported for tax year 1953, and $1200 of business expenses for tax year 1954.[3] *Hollman v. Commissioner of*

---

1. The decision is published at 520 F.Supp. 1019 (S.D.N.Y.1981).

2. Mr. Hollman's pro se papers in the administrative, district court, and appellate proceed-

ings properly preserved the dual grounds for relief as to both tax years 1953 and 1954.

3. The Tax Court also disallowed $1000 of business expenses for the tax year 1955. The Secretary recalculated Hollman's benefits for 1955

*Internal Revenue,* 38 T.C. 251, 257 (1962). The business deductions were disallowed because they were not supported by adequate documentation. *Id.* at 261. This finding resulted in Hollman's liability for additional income and social security taxes on the $2500 increase in self-employment income, which he duly paid. Mr. Hollman wants this increase reflected in his social security records, and in his monthly social security check.

Mr. Hollman contends that he falls within the "tax return" exception to the time limitation as set forth in Section 205(c)(5)(F) of the Social Security Act, 42 U.S.C. § 405(c)(5)(F), which permits the Secretary, after the expiration of the time limitation, to conform his records to "tax returns or portions thereof (including information returns or other written statements) filed with the Commissioner of Internal Revenue . . . except that no amount of self-employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) shall be included in the Secretary's records pursuant to this subparagraph." [4] The Government argues that there are no "tax returns or portions thereof" reflecting Hollman's 1953 ultimate self-employment earnings which were filed within the time limitation period and that following the termination of the

limitations period the only indications of any sort that Hollman had additional self-employment income were the assessments made by the IRS in the summer of 1960 and the decision of the Tax Court on May 11, 1962, neither of which constitutes "tax returns or portions thereof" as required by the statute, or was filed within the applicable limitations period. The Government emphasizes that the documents to which the statute refers must contain "precise amounts of income to which the Secretary may easily conform his records." Brief for Department of Health and Human Services at 10.

But the Government ignores the simple fact that makes the tax return exception applicable: Hollman had timely filed tax returns for both 1953 and 1954. These returns reported self-employment income and business deductions. They therefore contained precise amounts, and it is a very simple matter for the Secretary to conform his records to the adjustments made by the Tax Court. We find it an abuse of discretion and an error of law not to do so.

Reviewing the case law, we note that those courts that have refused to change records after expiration of the three year, three month, fifteen day limitation have done so on the basis that there were *no* actual timely-filed tax returns. Thus, the

because he had filed an amended income tax return for that year within the statutory time limitation.

The Tax Court also found that Hollman received additional income from capital gains, interest, and other income apparently derived from trading and investment in securities. Hollman does not seek amendment of his Social Security earnings record to include any of this additional self-employment income. If the Secretary includes the disallowed deductions, Hollman will reach the maximum self-employment income creditable toward benefits for the years in question, and therefore receive the maximum monthly disability payment, computed under 42 U.S.C. § 415.

4. The parties' briefs addressed the issue whether a consent agreement executed on February 15, 1957, between Mr. Hollman and a delegate of the Secretary of the Treasury was a "written statement" within the meaning of the tax return exception and whether it operated to toll the SSA statute of limitations. The consent

agreement was executed within the time limitation period for revision of the 1953 SSA earnings records. Pursuant to 26 U.S.C. § 6501(c)(4), it extended the three year time limit within which the I.R.S. could make assessments and collect any deficiencies due for the taxable year 1953. Two subsequent consent agreements extended the time to June 30, 1960.

In light of our holding that the timely filing of tax returns reporting gross self-employment income makes applicable the tax return exception to the SSA time limitation, we do not here decide the consent form issue. *Cf. North v. Califano,* [1978 Transfer Binder] Unempl.Ins. Rep. (CCH) ¶ 15,720 (D.Minn.1978) (IRS consent forms are "written statements" within meaning of § 405(c)(5)(F)(i)) *with Stroh v. Celebrezze,* 1 Unempl.Ins.Rep. (CCH) ¶ 15,026 (D.Mont.1963) (IRS consent agreement does not extend SSA statute of limitations). See also note 4, *infra.*

dairy farmer claimant in *Yoder v. Harris,* 650 F.2d 1170 (10th Cir.1981), wished to establish nine years' self-employment income for social security Medicare purposes. He had filed no tax returns for 1962–74. The Secretary held, and the court of appeals affirmed, that Forms 1099 filed by the farm cooperatives showing patronage dividends and interest paid to Yoder did not fall within the tax return exception precisely because, unlike timely filed returns, they fail to provide information from which the Secretary can determine net self-employment income. *Id.* at 1174. Similarly, the claimant in *Shore v. Califano,* 589 F.2d 1232 (3d Cir.1978), was not permitted to use the "best available evidence" in 1975 to support her assertion of self-employment income in 1951–54, when there were neither entries in SSA records nor actual timely filed tax returns. *Id.* at 1236. Finally, in *Stroh v. Celebrezze,* 1 Unempl.Ins.Rep. (CCH) ¶ 15,-026 (D.Mont.1963), which the Government argued as controlling, the self-employed home construction worker had not reported any income from his business on tax returns for 1946–57, and thus unsuccessfully applied for a Social Security pension in 1959. Thus in *Yoder, Shore,* and *Stroh* the claimants sought to establish their initial eligibility for benefits by *creating* SSA records after the statute of limitations had run.

In contrast, where claimants, like Hollman, have timely filed a tax return containing the information from which the Secretary could amend the record, courts have permitted subsequent correction even in the absence of timely initial self-employment social security record entries. In *Maloney v. Celebrezze,* 236 F.Supp. 222 (N.D.Ohio 1964), a blind commission salesman used a Form 1040A on advice of an IRS clerk, rather than a 1040 with supplemental Schedule SE, and filed an amended tax return five years later. In *Ellis v. Gardner,* 304 F.Supp. 765 (E.D.Pa.1969), the retiree's accountant listed sale of her business as a long-term capital gain, which IRS subsequently determined properly to be self-employment income. In *North v. Califano,* [1978 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 15,720 (D.Minn.1978), the claimant

had timely filed tax returns for 1962–64, reporting certain sales proceeds as long term capital gains, which the IRS determined after audit to be self-employment income. The court held that the Secretary could conform his records to the portions of North's original tax return reporting capital gains under the exception stated in 42 U.S.C. § 405(c)(5)(F). Hollman's case is stronger than *Maloney, Ellis,* or *North* because Hollman reported self-employment income in his initial returns and the Secretary made a contemporaneous record entry. Thus we read 42 U.S.C. § 405(c)(5)(F) as restricting possible time limit inclusion of self-employment income only when the tax return reporting the income was filed after the expiration of the time limitation. We need not reach the more difficult question reached in *Maloney, Ellis* and *North* where the initial return did not report self-employment income.

Applying the tax return exception to the time limitation in 42 U.S.C. § 405(c)(5)(F), we have concluded that the Secretary may amend Mr. Hollman's SSA records for 1953 and 1954. Moreover, applying § 405(c)(4)(C), we conclude, as Mr. Hollman has urged in his pro se papers, that the Secretary *must* do so. The statute provides:

> After the expiration of the time limitation following any year—
>
> . . . .
>
> (C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year.
>
> *Id.*

This portion of the social security statute addresses the situation, not present here,

where a claimant wishes to *create* a social security self-employment earnings record after the three year, three month, fifteen day time limit. Absence of an entry of self-employment income is conclusive that none was earned in a particular year *unless,* as in Hollman's case, the claimant "filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary *shall* include in his records the self-employment income of such individual for such year." *Id.* (emphasis added). The statute makes no exception where the correction or inclusion of additional self-employment income is brought to the Secretary's attention after the expiration of the time limitations. What the statute keys on is the filing of the tax return. *See also* 20 C.F.R. § 404.822(b)(2) (1982).

The conclusive presumption protects the government from spurious or merely inaccurate and unverifiable claims based on after-the-fact evidence. We acknowledge the validity of the policy considerations inherent in this provision. Because self-employed workers control the reporting of their income without the check of employers' also reporting their wages to IRS, Congress saw fit to impose a stricter standard for amendment of their SSA records. *Compare* 42 U.S.C. § 405(c)(4)(C) (absence of SSA record entry as to self-employment income is conclusive evidence) *with id.* (B) (absence of SSA record entry as to wages is presumptive evidence). When, however, a taxpayer has reported the gross amount of his self-employment income in a timely filed tax return, and the proper net amount of that income is ascertainable from official documents (here, a decision of the United

States Tax Court), the government is completely protected from false claims based on subsequently manufactured evidence.

Further, were we to prohibit amendment, claimants would face an unacceptable dilemma. The proper net amount of Hollman's self-employment earnings could not be ascertained within the statutory period unless he admitted liability for taxes about which there was a legitimate dispute.[5] No legislative purpose would be served by construing the Secretary's statutory record-keeping authority to require such a result.

Judgment reversed.

---

**5.** We note that the Secretary himself tolls the statute of limitations for correcting records when the correction is the result of an SSA investigation started before, but completed after, the time limit ends. 20 C.F.R. § 404.-822(e)(1) (1982). While the regulation relates only to Social Security Administration-initiated investigations, it confirms Hollman's broader argument in equity with which the district court (*Hollman v. Dep't of Health & Human Servs.,* 501 F.Supp. 255, 258–59 (S.D.N.Y. 1980)) and the administrative law judge (Recommended Decision, Mar. 26, 1981, Joseph

Halpern, ALJ) agreed. When a federal agency investigation uses up a claimant's statute of limitations time period, the statute should be equitably tolled so that the claimant may correct his records to reflect the result of the investigation. Otherwise every self-employment claimant is subject to the vagaries of the IRS and the burdens that would be imposed by lengthy tax court litigation. We take judicial notice that tax court litigation may cover several years because of the case backlog in that court.