**Glenn L. HENDRICKSON, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.**

No. 84–5126.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1985.

Decided June 26, 1985.

Fagg, Circuit Judge, filed a dissenting opinion.

David A. Bailly, Minneapolis, Minn., for appellant.

Joan Leese Lowes, Asst. Reg. Atty., Health and Human Services, Chicago, Ill., for appellee.

Before LAY, Chief Judge, HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

This appeal arises from the denial of disability benefits because the Secretary of Health and Human Services determined Glenn L. Hendrickson did not have at least twenty quarters of coverage in the forty quarters preceding the disability.. 20 C.F.R. § 404.130(b).[1] Hendrickson claims he became disabled in July 1972. He was denied benefits in July 1980. After a hearing in May 1981 an administrative law judge concluded Hendrickson had only fifteen quarters of coverage. On review the Appeals Council denied his claim in September 1982. Hendrickson then brought this action in the United States District Court for the District of Minnesota, under 42 U.S.C. § 405(g). Both parties moved for summary judgment. The district court, the Honorable Diana E. Murphy, decided the claimant did not qualify for additional quarters of coverage and granted summary judgment for the Secretary. We find the Secretary erred in refusing to credit Hendrickson with eleven additional quarters of coverage; we reverse and remand to the Secretary for a hearing on the issue of disability.

The controversy centers on the claimant's employment status and income in 1967, 1968, and 1969. During those years Hendrickson did carpentry work for Walker Art Center in Minneapolis, Minnesota, as an independent contractor. He did not file an income tax return for 1967 or 1968 because he believed he did not earn enough to require filing. In 1969 Hendrickson filed a joint return with his wife. Each year Walker Art Center filed a Form 1099 with the Internal Revenue Service, informing it of payments made to Hendrickson of $983.50 in 1967, $547.51 in 1968, and $2,265.05 in 1969. A W–2 form was filed by Macey Signs, Inc. for 1968, reporting $92.00 in wages paid to Hendrickson. Hendrickson was given one quarter of credit for 1968 on the basis of the W–2 form. In 1981 his attempt to file amended returns for 1967 and 1969 was rejected by the IRS.

The Secretary initially argues that there exists a conclusive presumption under 42 U.S.C. § 405(c)(4)(C) to bar the claimant from claiming sufficient quarters because he has failed to file an income tax return for the years in question.[2] Under 42 U.S.C. § 405(c)(2)(A) the Secretary maintains records of self-employed individuals' income. The records are used to determine whether each individual has sufficient quarters of coverage to qualify for benefits. Section 405(c)(3) states that such records, or their absence, shall be evidence in administrative and court proceedings regarding eligibility. There are provisions in

1. Self-employed workers are credited with coverage for each quarter they earn $100 or more, 20 C.F.R. § 404.141, and calendar year taxpayers, such as Hendrickson, can spread their income equally over each quarter, 20 C.F.R. § 404.142.

2. 42 U.S.C. § 405(c):

* * * * * *

(4) Prior to the expiration of the time limitation following any year the Secretary may, if it is brought to his attention that any entry of wages or self-employment income in his records for such year is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such

omitted item in his records, as the case may be. After the expiration of the time limitation following any year—

* * * * * *

(C) the absence of any entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year.

section 405(c)(5) [3] for changes or corrections of those records beyond the three year, three month, fifteen day limitation period established for changes or additions under 405(c)(4).

The information in the Secretary's file for Hendrickson included a "Report of Contact," dated March 3, 1970, and replies from Hendrickson and Walker Art Center to letters the Secretary's representative sent in May 1970. The materials in the file clearly establish that Walker Art Center hired and paid Hendrickson as an independent contractor. The Secretary was also informed that Hendrickson had filed a tax return for 1969. On May 11, 1970, a claims representative of the Secretary wrote to Hendrickson and stated in part: "If you do not plan to file (an amended return for 1967, 1968, and 1969) please list below your estimated expenses for each year." Hendrickson replied he did not make enough income to file in 1967 and 1968 and that he filed and paid $40.20 in federal tax for 1969. [4] At the time the May 11 letter was written the Secretary had available the Form 1099s filed by Walker Art Center as well as Hendrickson's 1969 Form 1040. Although Hendrickson claimed his occupation as "self-employed" on the Form 1040, his income was listed on line 11 as "wages, salaries, tips, etc." He claimed no expenses and attached no schedules. Instead, Hendrickson paid tax on the full amount of his income, thereby claiming his gross income to be his net income. The Form 1099s clearly establish that Hendrickson's gross income exceeded $400 in 1967, 1968, and 1969.

The Secretary argues under section 405(c)(4) that in the absence of any timely filed tax return the claimant is forever barred from establishing his claim. This argument has been rejected by the Sixth Circuit. In *Grigg v. Finch*, 418 F.2d 661, 664 (6th Cir.1969), the court observed that "absence of an entry in the Secretary's records" must be read in light of other statutory provisions found in section 405(c)(5)(F). The court held that "absence" must mean no entry in the Secretary's records even after inclusion of information allowed by section 405(c)(5)(F). We agree with this interpretation and find that the Form 1099s filed by Walker Art Center provided actual or constructive notice of Hendrickson's self-employment income for the years 1967 and 1968. The Secretary urges that section 405(c)(5)(F), which establishes a rebuttable presumption against coverage, applies only to "wages." This ignores the plain language of section 405(c)(5)(F) since it specifically includes wages "or self-employment income." Furthermore, we find the informational returns filed by Walker Art Center were timely filed in 1967 and 1968. Under these circumstances the Secretary may not invoke the preclusive bar set forth in section 405(c)(4).

The Secretary refuses to change her records and credit Hendrickson with additional quarters because she believes section 405(c)(5)(F)(i) does not allow her to do so. According to the Secretary "information returns and other written statements," do

---

3. 42 U.S.C. § 405(c):

> \* \* \* \* \* \*
>
> (5) After the expiration of the time limitation following any year in which wages were paid or alleged to have been paid to, or self-employment income was derived or alleged to have been derived by, an individual, the Secretary may change or delete any entry with respect to wages or self-employment income in his records of such year for such individual or include in his records of such year for such individual any omitted item of wages or self-employment income but only—
>
> \* \* \* \* \* \*
>
> (F) to conform his records to—

> (i) tax returns or portions thereof (including information returns and other. written statements) filed with the Commissioner of Internal Revenue under Title VIII of the Social Security Act [42 U.S.C. § 1001 et seq.], under subchapter E of chapter 1 or subchapter A of chapter 9 of the Internal Revenue Code of 1939, under chapter 2 or 21 of Title 26, or under regulations made under authority of such title, subchapter, or chapter \* \* \*.

4. The Hendricksons actually paid $74 in federal taxes, but $33.80 had been withheld from Mrs. Hendrickson's wages. Thus, the Hendricksons paid the balance due of $40.20 when they filed their return.

not include a Form 1099. Instead, the Secretary argues the language simply explains that "portions" of timely filed tax returns which report self-employment income may be considered apart from the tax return as a whole. This interpretation is supported by *Yoder v. Harris,* 650 F.2d 1170, 1172–73 (10th Cir.1981). We respectfully disagree with this interpretation.

■ Under the Secretary's interpretation the parenthetical clause "including information returns" would be redundant and meaningless. To urge that "portions thereof" is merely explained as including information returns filed as portions of tax returns is contradictory to the directions given to the payee on his Form 1099 "not to attach to your income tax return." In other words, an information return, such as Form 1099, is clearly not a portion of a tax return; under such circumstances we think it clear that the Secretary's records may be amended by Form 1099 information returns and other written statements, such as the May 11 letter and petitioner's response.

■ The Secretary and the *Yoder* court rely on legislative history to support their interpretation. It is clear Congress was concerned that there be some accurate and practical means of obtaining information regarding the income of self-employed persons. It also is abundantly clear that Congress wanted to protect the government from unreliable information and false claims. However, a critical reading of the legislative history does not lead to the conclusion that Congress intended to exclude information returns such as Form 1099. Instead it appears Congress expected the Secretary would first look to tax returns to verify self-employment income because that would be the most simple and direct means of obtaining accurate and complete income information. *See* S.Rep. No. 1669, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Serv. 3287, 3299, 3390–91, 3410–15, 3451–59, 3461–62. The plain language of section 405(c)(5)(F)(i), however, allows for consideration of information returns, such as Form 1099, when necessary.

In *Grigg,* 418 F.2d at 661, the Secretary had available Grigg's 1958 tax return and Form 1099s for 1957 and 1956. The court held the Secretary must consider the Form 1099s because they "satisfied the requirements of § 405(c)(5)(F) * * * thereby giving the Secretary actual or constructive notice of Grigg's self-employment income for the years 1956 and 1957." *Id.* at 664. The decision was reconsidered in *Burke v. Secretary of Health and Human Services,* 680 F.2d 1128 (6th Cir.1982), but not overruled. Burke had filed joint tax returns in 1958, 1959, and 1960 showing all income as her husband's. The Burkes owned a motel as partners and filed informational partnership returns for 1958, 1959, and 1960 indicating an equal distribution of income. The informational returns were presented for the purpose of contradicting timely-filed tax returns. The Sixth Circuit held section 405(c)(5)(F) prevented consideration of the partnership returns and characterized *Grigg* as an exception to the general rule that section 405(c)(5)(F) only allows consideration of tax returns. *Id.* at 1130. *Grigg* was distinguished on equitable grounds:

> [T]he claimant [Grigg] offered informational returns [Form 1099s] filed by the Detroit Conservancy of Music which supported his claim of self-employment * * *. Those returns, filed as they were by a disinterested third party, allowed the court to avoid section 405's strict conclusive presumption and at the same time heed the evidentiary concerns expressed in the statute. That equitable consideration is not present here. Burke has offered no independent evidence to refute the records of the Secretary.

*Id.* In the present case, Walker Art Center, a disinterested third party, filed Form 1099s for 1967, 1968, and 1969. Thus, this case is similar to the facts considered in *Grigg.* Certainly the same equities require the same result.

■ The Secretary argues that even if she may consider the Form 1099s, they are insufficient because they only provide information on gross income. The Secretary also refuses to consider Hendrickson's

timely filed 1969 tax return because he claimed no business expenses and the income reported was gross income. Relying on *Hollman v. Department of Health and Human Services*, 696 F.2d 13 (2d Cir.1982), the Secretary urges she need only consider a tax return reflecting gross income when the proper net income can be determined from official documents. Without records substantiating net income of at least $400 per year, the Secretary contends Hendrickson cannot qualify for disability coverage.

The decision in *Hollman* was based on the court's concern that subsequently manufactured evidence could be used in conjunction with an erroneous tax return to establish a false claim for disability coverage. *Id.* at 17. This same concern is expressed in *Shore v. Califano*, 589 F.2d 1232 (3d Cir.1978), where the Secretary had no timely filed tax returns or contemporary records of self-employment income. But the *Hollman* court held, under sections 405(c)(4)(C) and (c)(5)(F), that the Secretary must conform his records to timely filed tax returns. Because official documents established the net amount of Hollman's income, the court directed the Secretary to credit Hollman with the appropriate quarters of coverage. *Hollman*, 696 F.2d at 17.

In the present case we need not be concerned with the problem of subsequently manufactured evidence. The Form 1099s, the 1969 Form 1040, and letters in the Secretary's file are contemporary official documents which establish that Hendrickson's gross income was also his net income. When he filed his tax return for 1969, plaintiff chose not to claim any business expense deductions. He declared his gross income to be his net income and paid tax on the full amount. Perhaps he could have claimed some expenses and reduced his net income, but Hendrickson should not be penalized now by the Secretary for failure to use expense deductions which would have reduced his tax. The Secretary asked plaintiff, in 1970, to estimate his business expenses for 1967, 1968, and 1969. Plaintiff declined, as he had on his 1969 tax return. The reasonable inference is that

Hendrickson had no business expenses—at least none that he could substantiate. Thus, taken as a whole, the records available to the Secretary since the spring of 1970 support the conclusion that Hendrickson's net income was the same as his gross income. It is true that Hendrickson listed his self-employment income on line 11 of Form 1040, as "wages, salaries, tips, etc." However, this ambiguity should not be construed against him, particularly in light of the fact that the Secretary's March 1970 "Report of Contact" states Hendrickson was an independent contractor and should be considered self-employed.

■ We find the Secretary abused her discretion by failing to consider the timely filed Form 1099s and 1969 Form 1040 under section 405(c)(5)(F)(i). The 1969 tax return, together with the other information in the Secretary's file, establishes that Hendrickson is entitled to four quarters of coverage for 1969. The 1967 and 1968 Form 1099s, together with the other information in the Secretary's file, establish that Hendrickson is entitled to four quarters of coverage for 1967 and an additional three quarters of coverage for 1968. We direct the Secretary to amend her records and credit plaintiff with these additional quarters of coverage. The case is remanded to the Secretary for a hearing on the issue of disability.

Reversed and remanded.

FAGG, Circuit Judge, dissenting.

I respectfully dissent. In my view, the Secretary properly invoked the conclusive presumption of section 405(c)(4)(C) whether we allow equitable considerations such as those involved in *Grigg v. Finch*, 418 F.2d 661, 664 (6th Cir.1969), to substitute for a tax return or not. Even considering all the documentary evidence on file with the Secretary, I conclude that Hendrickson has failed to establish his entitlement to any quarters of coverage for 1967 or 1968. The Secretary's determination of coverage depends on Hendrickson's *net* self-employment income. 42 U.S.C. § 411(b). I dis-

agree with the court's rationale for concluding that Hendrickson had no business expenses in 1967 and 1968 and that his net income thus equals the gross figures shown on the form 1099s. The only documentary evidence I find in the Secretary's file that even bears on the question of net income in 1967 and 1968 establishes to my satisfaction that Hendrickson is ineligible for coverage.

The court concludes that Hendrickson had no business expenses in 1967 and 1968 based on Hendrickson's 1969 tax return, on which he claimed all his income as "wages" with no business deductions, and on a 1970 letter Hendrickson returned to the Secretary, *ante* at 752. The inference that Hendrickson had no business expenses in 1969 depends on his failure to take deductions in the face of an incentive to do so, that being his incentive to reduce his income tax bill. The same inference does not arise from Hendrickson's failure to declare expenses in 1967 and 1968 because Hendrickson owed no income taxes. Because the failure to declare expenses is not probative of Hendrickson's net income, there is no logical basis in the Secretary's file upon which to conclude that his net income equals his gross income.

In my view, the 1970 letter conclusively establishes Hendrickson's ineligibility for any self-employment credit in 1967 or 1968. Hendrickson did not simply decline to respond to the Secretary's request for an estimate of his 1967–68 business expenses. Instead, he responded that he "did not make enough income to file." The law requires filing by all taxpayers who earn more than $400 in net self-employment income, regardless of liability for personal income tax. I.R.C. § 6017. I agree with the court, *ante* at 750, that the Secretary's file clearly establishes Hendrickson's self-employed status. Thus, based on the law and the documentary evidence in the Secretary's file, Hendrickson's net income in 1967 and 1968 must have been less than $400, in which case he is ineligible for any quarters of coverage. 42 U.S.C. § 411(b)(2); 20 C.F.R. § 404.1096(c)(1).

With or without *Grigg,* Hendrickson's file contains neither a tax return nor any other documentary evidence of qualifying self-employment income for 1967 or 1968. Thus, section 405(c)(4)(C) bars the award of any additional quarters for those years. Without credits for 1967 and 1968, Hendrickson cannot meet the eligibility requirement. Accordingly, I would affirm the district court.