**Mary LaPIERRE, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner, Social Security Administration, Defendant.**

**No. C96–773D.**

United States District Court, W.D. Washington.

Oct. 23, 1997.

Harvey S. Grad, Harvey Grad, Seattle, WA, for Plaintiff.

Harold Malkin, U.S. Atty.'s Office, Seattle, WA, for Defendant.

## CORRECTED

## ORDER OF REMAND

DIMMICK, Chief Judge.

Plaintiff has appealed to this Court asking for a reversal of the decision denying bene-

fits issued by the Social Security Commissioner and upheld by the Administrative Law Judge (ALJ). The Court finds that the ALJ's decision was not supported by "substantial evidence" and that the ALJ improperly rejected relevant evidence without providing specific articulable reasons for his rejection. Upon a careful review of the evidence and facts, this Court finds that Ms. LaPierre qualifies for benefits and REVERSES the decision of the Commissioner and the ALJ. The Court hereby REMANDS this matter to the Commissioner for a determination of benefits.

This case concerns an appeal of denial of SSI disability benefits. Plaintiff applied for benefits in 1993, when she was fifty-three years old, and claimed her onset of disabilities in April 1991. Her claim for benefits was rejected by the Commissioner, and her appeal to the Appeals Council was also rejected. Ms. LaPierre filed applications for SSI and disability benefits in May and June of 1993, claiming disability as of May 1991 because of "organic brain dysfunction secondary to closed head injury and fibromyalgia." At the time of her application, plaintiff had spent several years working successfully as a commercial real estate agent. Her applications were denied by the Social Security Office and then by the Administrative Law Judge ("ALJ"). Plaintiff has now brought this appeal of the ALJ decision.

The combination of the disorders that Ms. LaPierre allegedly suffers from include deficits in mental functioning, including memory problems and disorientation, and severe physical pain. The ALJ found that Ms. LaPierre's ability to function was impaired, but nonetheless ruled that she should be able to resume work in some capacity in her field and was therefore not disabled. The ALJ concluded that plaintiff engaged in substantial gainful employment through 1994, and therefore could not be considered "disabled". Plaintiff claims that she was engaged in a "trial period of employment," rather than substantial gainful activity ("SGA").

The Court will first consider the threshold issue of whether plaintiff was engaged in significant gainful activity in the period after the onset of the alleged disability. Ms. La-Pierre performed some work and received some income in the period between 1992–94. In 1992, plaintiff had a net income of $9772; in 1993, a net income of $4,953; and in 1994, a net income of $3,162, with no income in 1995. Since plaintiff's income was largely dependent on her performance as an agent, this represents a serious decline from her net income of $32,134 in 1990. Income over $500 per month is presumptively considered SGA, income below $300 is presumptively not SGA, while income between $300 and $500 monthly falls into a discretionary zone.

■ Plaintiff claims that while she went to work on a part-time basis in 1992–94, she was only marginally and intermittently productive. Her employer supports this description. Some days she would work for a few hours, some days not at all. Plaintiff argues that the ability to work "only a few hours a day or to work only on an intermittent basis" is not considered the ability to engage in "significant gainful employment." See *Kornock v. Harris*, 648 F.2d 525 (9th Cir.1980). She also alleges that some of her income in 1991–92 was from pre-existing projects, and that she was unable to bring in significant new business. Her income in 1993 and 1994 is low enough that it does not necessarily qualify as "significant gainful employment," particularly since part of the income was from a short-term driving job that she was found incapable of performing safely, and which is unrelated to her professional occupation. Her income in 1992 was high enough that it would presumptively be considered "significant gainful employment," unless it is considered to be part of a trial work period.

■ A trial work period consists of up to nine months of work performed after the onset of disability. The Commissioner and the U.S. Attorney's Office argue that a "trial work period" cannot start until a determination of disability has been made. Plaintiff argues that a trial work period can start any time after the onset of disability, and that it is not necessary for a plaintiff to wait for a determination of disability before attempting a return to work. The Ninth circuit has not yet addressed this issue, although two Ninth Circuit district court cases and circuit court

opinions from the Seventh and Tenth Circuits support plaintiff's interpretation. *See Deihl v. Secretary of Health and Human Services,* 835 F.Supp. 1182, 1186 (C.D.Cal. 1993); *Wilson v. Shalala,* 841 F.Supp. 1491 (E.D.Wash.1994); *McDonald v. Bowen,* 818 F.2d 559 (7th Cir.1986); and *Walker v. Secretary of Health And Human Services,* 943 F.2d 1257, 1259 (10th Cir.1991). These cases support plaintiff's argument that a claimant can engage in a trial work period starting five months after the onset of disability, which in plaintiff's case would mean starting in October 1992.

Defendants cite a Ninth Circuit district court case in support of their position, although they misinterpret the holding of that case. *See Ziff v. Chater,* 930 F.Supp. 1356, 1359 (N.D.Cal.1996). In *Ziff* the court ruled that a claimant could engage in a trial work period before a determination of benefits, but not before applying for benefits. *Id.* The other courts addressing this issue have not placed the same restriction on the trial work period start date, and the Court does not find the logic of the *Ziff* court persuasive. Therefore, this Court finds that Ms. LaPierre may exclude nine months of income for a trial work period starting in October 1992. The Court also finds that Ms. LaPierre did not engage in "significant gainful activity" in 1993 or 1994.

■ The next question before the Court is whether Ms. LaPierre qualifies as disabled. Ms. LaPierre has accumulated a voluminous medical history since her auto accident in 1991. Ms. LaPierre alleges that she suffers from fibromyalgia and organic brain dysfunction due at least partially to the auto accident she suffered in 1991. She has been seen by several neurologists, including a specialist in closed head injuries, and a rheumatologist. Accounts of her disorder vary. She has been diagnosed by different doctors as having fibromyalgia, post-concussion organic brain dysfunction, post-traumatic stress disorder, obsessive-compulsive disorder, depression, and a somatoform disorder. The psychologi-

cal and IQ tests appear to support plaintiff's claim that there is a significant gap between her intelligence level and her level of functioning. In particular, plaintiff seems to have problems with handling simultaneous tasks or stressors. She also suffers from halting speech, memory problems, and difficulties in concentration.

Plaintiff alleges that the ALJ did not properly consider the evidence relating to her disability. The ALJ appears to have exhibited some bias against plaintiff. He repeatedly asked plaintiff why she had not pursued psychological counseling, despite plaintiff's explanation that she had no money for counseling. He also seemed overly concerned with why she had not taken "aerobics" classes.[1] The plaintiff explained that she had undergone some physical therapy, including lifting light weights, and that she attempts to walk, although it is often too painful for her to walk very far. The ALJ later claimed that the fact she takes walks is one factor indicating she is not truly disabled. In any case, plaintiff's physical impairments are not the only or even the primary cause of her alleged disability. The physical pain certainly seems to cause plaintiff distress, but the primary impairment of her ability to work appears to be her mental and cognitive deficits.

For the purpose of review, the most glaring deficiency on the part of the ALJ's analysis is his persistent discounting of any testimony on plaintiff's behalf. He discounted the medical opinion of plaintiff's treating physician, Dr. Brown, preferring instead to focus on the opinion of a neurologist who saw Ms. LaPierre only briefly and who is not an expert in fibromyalgia, and the opinion of the medical examiner, who had never met Ms. LaPierre before the date of the hearing. As plaintiff points out and the U.S. Attorney acknowledges, the ALJ also made a mistake as to when and how often Ms. LaPierre had seen Dr. Brown.[2] He also discounted the opinion of Dr. Persi, who also treated Ms.

---

1. At one point the ALJ asked her if she watches "Jane Fonda" or "O.J. Simpson" exercise tapes. Plaintiff responded that she does not watch any exercise tapes.

2. The ALJ wrote that she had only seen Dr. Brown once between 1992 and 1995.

LaPierre for a significant period of time for her organic brain dysfunction.

■ The Ninth Circuit has directed that ALJ's grant more weight to the opinions of treating physicians, such as Drs. Persi and Brown, and less to the opinion of non-examining doctors, such as Dr. Olson. *See Rodriguez v. Bowen,* 876 F.2d 759, 761–62 (9th Cir.1989); *Lester v. Chater,* 81 F.3d 821 (9th Cir.1995). The opinion of treating physicians is also given more weight than merely examining physicians. Plaintiff argues that since there was no medical testimony that contradicted Dr. Brown's diagnosis of fibromyalgia, it was error for the ALJ to disregard Dr. Brown's opinion on fibromyalgia. The Ninth Circuit has ruled that, "where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater,* 81 F.3d at 830 (citing *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991)). Plaintiff also argues that it was error for the ALJ to reject the diagnosis of organic brain dysfunction, although the treating physician's testimony was contradicted in this area. If testimony of a treating physician is contradicted by another doctor, "the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* Plaintiff argues that the ALJ provided neither "clear and convincing" nor "specific and legitimate" reasons for rejecting the testimony of plaintiff's treating physicians. The ALJ's order primarily discusses the testimony of Drs. Burkhart and Olson, and does not provide adequate reasons for rejecting the opinions of Drs. Persi and Brown. It thus appears that substantial evidence in the record supports plaintiff's position, rather than the position of the ALJ.

■ The ALJ appeared to disregard the testimony of lay witnesses, including plaintiff's former employer, co-workers and friends, except to the extent that he thinks they have contributed to plaintiff's illness by "becoming, albeit unwittingly, active or passive reinforcers of the claimant's disability conviction." ALJ Order at 8. However, courts have held that the testimony of lay witnesses is highly relevant to such proceedings, as they are in a position to observe a claimant's activities and symptoms. *See Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993). As the Ninth Circuit recently emphasized: "Disregard of the testimony of friends and family members violates 20 C.F.R. § 404.1513(e)(2) ... Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects." *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir.1996). There is no indication in the hearing record or the ALJ order to indicate that the ALJ individually considered the testimony of the many lay witnesses who testified on Ms. La-Pierre's behalf. These lay witnesses consistently testified that Ms. LaPierre has suffered a dramatic change in both functioning and personality. They all describe a woman who was highly intelligent, professionally successful, organized, and sociable, and who is now disorganized, erratic, and incapable of sustaining professional or personal relationships or responsibilities.

In the ALJ's own words, he "discounts any and all" of the testimony of plaintiff's vocational expert, despite his excellent credentials, because he claims that the vocational expert is "in reality part of the advocate process, thus far from an independent witness." ALJ Order at 9. However, he did take seriously the opinion of the commissioner's vocational expert. The vocational expert appeared to acknowledge that Ms. LaPierre could not return to her former job as a real estate agent. He proposed two "light-duty" jobs that plaintiff might be qualified for, real estate clerk and phone solicitor. Upon cross-examination, he admitted that if the testimony of lay witnesses was considered, the described limitations would pose obstacles to her employment in those positions and he could not name a specific DOT job that plaintiff would be qualified for, TR 178. When confronted with evidence of her speech problems, he acknowledged that this might create problems for a phone solicitor, but steadfastly insisted there might still be some employer who would hire her as a phone solicitor despite the impediment. When asked for an

example, the vocational expert explained that the Cerebral Palsy Institute did sometimes hire people with such impediments, i.e. those impaired with cerebral palsy. The Court agrees with plaintiff's counsel that this constitutes an unreasonably limited number of positions.

■ The Court concludes that the combination of the physical and the mental disabilities make it impossible for plaintiff to work in her profession. The Social Security Commissioner has not met the burden of demonstrating that other specific DOT jobs exist which could accommodate her disabilities. The Court, therefore, finds that Ms. LaPierre is entitled to benefits.

■ Ms. LaPierre has applied to have her earnings records amended to reflect additional work history. It does not appear that the ALJ judge ruled on this issue. Ms. LaPierre has been self-employed for the last several years of her employment history. Previous to that time, she was employed as a 911 dispatcher. In the 1980's, there were several years in which she did not file tax returns, although the real estate agency she worked for filed 1099 forms for her. She claims that she did not file returns in those years because she did not believe she was earning enough net income to require filing and she did not know the rules for reporting for the self-employed had changed. She has since gone back and filed her returns and paid back any monies owed as penalties for not filing. She has asked to amend her earnings records to reflect the filed returns. Plaintiff cites several cases in support of her argument that when the IRS office has received filings by an employer, the IRS has actual or constructive notice of the earnings and amendment to reflect the additional earning quarters is proper. *See e.g., Hendrickson v. Sec. of Health and Human Services*, 765 F.2d 747 (8th Cir.1985), *vacated*, 774 F.2d 1355 (8th Cir.1985) (judgment vacated pursuant to settlement) and *Grigg v. Finch*, 418 F.2d 661 (6th Cir.1969). The Court finds that Ms. LaPierre's application to amend her earnings records should be granted.

In the Court's opinion, the ALJ's decision to reject plaintiff's claim for benefits was not grounded in "substantial evidence." The ALJ did not sufficiently consider evidence in plaintiff's favor and placed undue weight on the opinion of the non-examining physician. The ALJ also disregarded evidence of fibromyalgia, despite the fact that there was no contrary testimony to the diagnosis of her treating physician. While it is difficult to determine to what extent plaintiff's disability is psychologically versus physically based, it is clear that the combination of her conditions has rendered her disabled, and there is no evidence in the record to indicate that plaintiff is malingering. Therefore, the Court hereby REVERSES the ALJ's decision and REMANDS to the Commissioner for a determination of benefits. The Commissioner is DIRECTED TO GRANT Ms. LaPierre's application to amend her earnings record.

The Clerk of the Court is directed to send copies of this order to Magistrate Judge Philip K. Sweigert and counsel of record.