Leonid LYUBLINSKY, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CV–02–2047RJD.

United States District Court,
E.D. New York.

March 16, 2005.

Leonid Lyublinsky, Brooklyn, NY, for Plaintiff.

Som Ramrup, Special Assistant U.S. Attorney, Eastern District of New York, Brooklyn, NY, for Defendant.

### MEMORANDUM & ORDER

DEARIE, District Judge.

*Pro se* plaintiff, a disabled 73–year–old man who has received Social Security Disability ("SSD") benefits since 1993, brings this action pursuant to 42 U.S.C. Sections 405(g) and 1383(c) to review defendant's final determination that his benefit rate was properly calculated. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, defendant moves for judgment on the pleadings. For the reasons stated below, the Commissioner's motion is granted and the complaint is dismissed.

## I.  Background

Plaintiff was born on February 6, 1932 and immigrated from the Soviet Union in 1979 as a refugee. Tr. 323, 1341. From 1981 through 1986, he worked for Delta Metal Products Company in Brooklyn as a self-described "helper-mechanic." Tr. 1229. He stopped working in 1986 and received Supplemental Security Income ("SSI") benefits from 1987 through 1993. Tr. 40, 235. He was found disabled by the Social Security Administration ("SSA") in 1993, with an onset date of October 1, 1986, after being diagnosed with tuberculosis, back pain, diabetes, hypertension, and prostate problems, among other ailments. Tr. 1143, 1144. He is also hard of hearing and legally blind. Tr. 199, 218. He has been separated from his wife since 1987 and lives in Brooklyn. Tr. 34.

## II.  Procedural History

On January 28, 1993, Administrative Law Judge Thomas P. Dorsey found plaintiff to be disabled under the meaning of the Social Security Act and entitled to SSD benefits, with a disability onset date of October 1, 1986. Tr. 58–61. The SSA sent plaintiff a Notice of Award on February 27, 1993, informing him that he would receive $375 per month beginning the following month. Tr. 64–68. The letter stated that the SSA would be withholding plaintiff's retroactive benefits for March 1987 through February 1993 because the SSA needed to determine whether plaintiff's SSD benefit amount would be reduced as a result of the SSI payments he received during that period. Tr. 65. On May 19, 1993, the SSA wrote plaintiff a letter indicating that his SSD benefit amount for 1987 through 1993 would be reduced by $21,713.94 as a result of his SSI payments, bringing his retroactive benefit total down to $2,169.06. Tr. 81, 82.

Plaintiff, who advances a variety of arguments throughout the 1,700–page record as to why he should be receiving more money from the SSA, first filed a request for reconsideration of his benefit amount on March 12, 1993. On October 7, 1993, the SSA wrote to plaintiff stating that after reviewing his records, the administration had determined that its initial calculations were correct. Tr. 98. Plaintiff requested a hearing on the matter before an ALJ on November 1, 1993. On March 16, 1994, plaintiff appeared *pro se* before ALJ Herbert S. Forsmith, but the hearing was terminated prematurely when plaintiff's interpreter was called away. The ALJ stated that the hearing would continue on another day, but he denied plaintiff's claim on December 30, 1994 without having resumed the hearing. In his written opinion, ALJ Forsmith found that plaintiff's benefit rate had been correctly calculated and that plaintiff seemed to disagree with the law itself, not with the way the SSA was interpreting the law. Tr. 308–309. Plaintiff requested a review of this decision on February 21, 1995. Tr. 310. On December 19, 1995, the Appeals Council upheld the decision. Tr. 3.

On January 29, 1996, plaintiff appealed to this Court. On November 7, 1996, this Court remanded the case to defendant Commissioner because plaintiff had been denied his right to a fair hearing. Tr. 315. Another hearing before ALJ Forsmith was held on September 23, 1997. Tr. 81, 281. Plaintiff's ex-wife appeared on his behalf. Tr. 284–285. On May 9, 1998, ALJ Forsmith again found that plaintiff's benefit rate had been properly calculated. Plaintiff filed a request for a review of ALJ Forsmith's decision with the SSA on July 6, 1998. That request was denied on January 12, 1999. Tr. 197.

Plaintiff appealed to this Court for the second time on January 20, 1999. On

April 20, 2000, the Court once again remanded the case, ordering defendant to afford plaintiff an opportunity to obtain legal representation. Tr. 857. Plaintiff succeeded in obtaining a lawyer and again appeared before ALJ Stagno on March 14, 2001. On August 22, 2001, ALJ Stagno denied plaintiff's claim, finding that there was no "objective evidence" in the record supporting his contention that he earned more money than SSA documents indicated. Tr. 859. On August 31, 2001, plaintiff filed a request for reconsideration, which the Appeals Council denied the following February.

Plaintiff filed his third action before this Court on April 1, 2002. Plaintiff was no longer represented at the time of filing and requested the appointment of counsel. Despite diligent efforts for more than a year, the Pro Se Office failed to find an attorney willing to take the case. *See* Mem. from I. Alexei Martinez, Pro Se Office, E.D.N.Y., Dec. 3, 2003.

### III. Discussion

#### 1. Benefits Calculation Dispute

The sole issue before the Court is the amount of plaintiff's monthly benefits. In 1993, plaintiff's benefit rate was calculated at $294.60 per month and was increased to $375 after cost-of-living adjustments were computed. Tr. 64. The SSA also determined that plaintiff was owed $2,169.06 for the period from 1987 through 1993. Tr. 71.

To advance his argument that the benefit amount was calculated incorrectly, plaintiff has made various claims at various times, including: he made more money than the SSA credited him with (tr. 5); the formula used to calculated benefit amounts is unfair; the calculations were performed incorrectly (tr. 7); he is being "discriminated against" (tr. 5,7); his SSA records have been tampered with; he was looking

for work before 1979, the year in which he actually began work (tr. 52); he suffered an accident on the job (tr. 286); payments have been withheld because he spent time in jail (tr. 289); and he earned money in 1991 that should have been included in the calculations (tr. 78). Without exception, his claims are vague, incoherent, and unsubstantiated.

In fact, when ALJ Forsmith and ALJ Stagno asked him to substantiate these claims at hearings, plaintiff repeatedly faltered. For example, plaintiff testified that in 1985, he earned $24,950, not $24,600, as SSA records indicate. Tr. 872. A minute later, however, plaintiff acknowledged that the higher figure included "part of '86." Tr. 873. When asked to back up his claim in some other way, plaintiff made vague statements about being disabled and being entitled to more money under the law. At one hearing, he claimed that his payments should be as high as $3,300 per month, though at other points he claims he is owed around $900 per month. Tr. 292. In a letter to the SSA dated March 14, 1997, plaintiff appears to argue that his Social Security records have been tampered with or replaced with false documents. Tr. 1133. In another document, he claims that his earnings were "falsely reported" by his employer. Tr. 850. Throughout the record, plaintiff asserts that various public and private entities have discriminated against him.

#### 2. Burden of proof

Aside from plaintiff's contention that the benefit calculation formula as mandated by 42 U.S.C. Section 415 is *de facto* unfair, his primary claim appears to be that he earned more money than is reflected in his SSA earnings records. If plaintiff wished to seek a correction of his earnings records for any given year, however, he should have done so within three years, three

months, and fifteen days following that year. *See* 42 U.S.C. § 405(c)(1)(B). There is no evidence in the record that he did so. After that period, the Commissioner's records are considered conclusive, and plaintiff has the burden of disproving the records by a preponderance of the evidence. *See* 42 U.S.C. §§ 405(c)(4), 405(c)(1)(B) (stating that Commissioner's wage records shall be considered conclusive and that the absence of recorded wages shall be "presumptive evidence" that no such wages were paid); *see also Butts v. Sec'y of Human Services*, 706 F.2d 107 (2d Cir.1983) (holding that where plaintiff repeatedly claimed that he had more creditable quarters of earnings than the SSA had recorded, plaintiff was required to prove by a preponderance of the evidence that the SSA's records were incomplete).

▮ In this action, therefore, the burden of proof is on plaintiff to show that the SSA's records are inaccurate. Yet in hundreds of pages of self-prepared filings pertaining to his work, medical and family history, plaintiff offers merely a chronicle of prolonged misfortune and suffering, not a rebuttal of the presumption that the SSA possessed the correct figures. *See Hollman v. Dep't of Health and Human Servs.*, 696 F.2d 13, 17 (2d Cir.1982) (stating that such a presumption "protects the government from spurious or merely inaccurate and unverifiable claims based on after-the-fact evidence").

### 3. The SSA's Calculations

▮ Plaintiff does not submit compelling evidence that mathematical errors were made in the Commissioner's 1993 calculations process. The Court will review these calculations *de novo,* however, to ensure that the statute was properly applied. *See Nettles v. Schweiker,* 714 F.2d 833, 836 (8th Cir.1983) (stating that it

is the district court's duty to review SSD benefit decisions to determine if they are based on legal error). Moreover, the Court wishes to ensure that this dispute, which has endured for more than a decade, is conclusively and permanently closed.

Benefit calculations are governed by 42 U.S.C. Section 415. Since plaintiff reached age 62 after December 31, 1983, his benefit amount should be calculated using the Average Indexed Monthly Earnings, or AIME, method. *See* 20 C.F.R. § 404.204(a)-(c); *see also* 2A Soc. Sec. Law & Prac. § 22–23 (2005). According to the SSA, plaintiff did not have any creditable earnings before 1979 or after 1986. Tr. 100–102, 105–107. The following table lists plaintiff's creditable earnings for 1979–1986 (middle column) alongside the average earnings of all U.S. workers for those years (left column) and plaintiff's "indexed" earnings (right column), as converted from actual earnings by the SSA. *Id.*

| Year | U.S. avg. earnings | Plaintiff's earnings | Plaintiff's indexed earnings |
|---|---|---|---|
| 1979 | $11,479.46 | $ 2,131.75 | $ 2,996.30 |
| 1980 | 12,513.46 | 6,201.89 | 7,996.82 |
| 1981 | 13,773.10 | 13,425.67 | 15,728.06 |
| 1982 | 14,531.34 | 17,809.81 | 19,775.36 |
| 1983 | 15,239.24 | 18,601.59 | 19,695.07 |
| 1984 | 16,135.07 | 21,610.37 | 21,610.37 |
| 1985 | 16,822.51 | 24,558.41 | 24,558.41 |
| 1986 | 17,321.82 | 8,090.25 | 8,090.25 |

*a) Determining the years during which earnings should be counted*

*1) Identifying the benchmark year*

To determine which years of earnings will be counted, the SSA must first establish a claimant's "benchmark" year. The

benchmark year is the year of plaintiff's disability onset or the year he turned 62, whichever is earlier. *See* 2A Soc. Sec. Law & Prac. § 23:9 (2005). Since plaintiff's disability began October 1, 1986 and he did not turn 62 until February 6, 1994, his benchmark year is the year of his disability onset, 1986.

### 2) Determining the number of "elapsed years"

A claimant's "elapsed years" are the calendar years beginning with 1951 or the year in which the claimant attained age 22, whichever is later, and ending with the year before the claimant reached 62 or became disabled, whichever is earlier. *See* 42 U.S.C. § 415(b)(2)(B)(iii); 20 C.F.R. § 404.211(e)(1). Plaintiff's elapsed years thus begin in 1954, the year he turned 22, and end in 1985, the year before he became disabled, for a total of 32 elapsed years.

### 3) Determining the computation base years

A claimant's "computation base years" are the years after 1950 up to, but not including, the year of disability onset. *See* 42 U.S.C. § 415(b)(2)(B)(ii); 20 C.F.R. § 404.211(a)(2). Hence, plaintiff's computation base years are 1951 through 1985, the year before he became entitled to disability benefits.

### 4) Determining the benefit computation years

The actual years of earnings used to compute the insurance amount are called "benefit computation years." *See* U.S.C. § 415(b)(2)(A)-(B); 20 C.F.R. § 404.211(e)(1). The number of benefit computation years equals the number of elapsed years (32, in this case; see above) minus five. Hence, the number of benefit computation years in this case is 27.

Next, the actual years to be used in the computation must be selected. In this case, the benefit computation years are the 27 computation base years (those years from 1951–1985) in which plaintiff earned the most.

Plaintiff's benefit computation years are thus 1979–1985, inclusive, plus 20 years in which plaintiff had no creditable earnings.

### b) Calculating the primary insurance amount using the AIME method

### 1) Determining plaintiff's AIME

First, the plaintiff's indexing year must be identified. A claimant's indexing year is the second year before the year in which the claimant became disabled. *See* 42 U.S.C. § 415(b)(3)(A)(ii); *see also* 20 C.F.R. § 404.211(d)(1)(ii). Plaintiff's indexing year is the second year before 1986, or 1984. Next, the National Average Wage Index must be consulted for 1984. According to that index, the average total wages for American workers in 1984 was $16,135.07. *See* 2A Soc. Sec. Law & Prac. § 23:20.

For each computation base year, an individual's indexed earnings are determined by: (1) calculating the ratio of the average total wages for the indexing year to the average total wages for the year in question, and (2) multiplying that ratio by the individual's actual wages for the year in question. *See* 20 C.F.R. § 404.211(d). The Court's determination of plaintiff's indexed earnings for 1979–1985 is reflected in the table above.

Once the plaintiff's indexed earnings have been determined for each of his benefit calculation years, these earnings must be totaled. *See* 20 C.F.R. § 404.211(f). The sum of plaintiff's indexed earnings for 1979–1985 equals $112,360.39. That figure must be divided by the number of months in plaintiff's benefit computation years,

which is 27 multiplied by 12 or 324. *Id.* The resulting quotient is $346.79. Rounded down to the nearest dollar, plaintiff's AIME is $346. *See* 42 U.S.C. § 415(g).

### 2) Determining the appropriate bend-point formula applicable to plaintiff's benchmark year

The formula for calculating benefits under the AIME method remains the same from year to year (see below), but the "bend points"—that is, the dollar amounts that are inserted into the formula—depend on a claimant's benchmark year. *See* 42 U.S.C. § 415(a)(1)(A)-(B). As stated above, plaintiff's benchmark year is 1986. For that year, the first bend point is $297 and the second is $1,493. *See* 2A Soc. Sec. Law & Prac. § 23:22 (2005).

### 3) Applying the bend-point formula to plaintiff's AIME

Benefits can now be calculated using the "bend-point" formula. *See id.; see also* 42 U.S.C. § 415(a)(1)(A). To do so, it is necessary to add the following two items: (1) 90 percent of the plaintiff's AIME up to $297 and (2) 32 percent of the remainder of plaintiff's AIME (in this case, $49). (The plaintiff does not have income exceeding the second bend-point, so that point is not applicable.) Adding $267.30 to $15.68 equals a total of $282.98. The plaintiff's primary insurance amount, before cost-of-living increases, is $282.98. Alternatively, if the year of plaintiff's disability onset (1986) is included as a benefit computation year, the plaintiff's primary insurance amount equals $294.60, the amount the SSA calculated in 1993.

The Court's review indicates that plaintiff is not entitled to additional benefits.

### IV. Conclusion

Plaintiff has had more than a decade to prove to defendant and to this Court that his benefits were erroneously calculated, but he has failed to do so. Defendant's motion for judgment on the pleadings is granted. The ALJ's decision is affirmed. The Clerk of the Court is directed to close this case.

SO ORDERED.